**CONSOL PA COAL COMPANY,**
Petitioner,

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (BARDOS),**
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 30, 1994.
Decided Feb. 2, 1995.

Daniel J. Iler, for petitioner.

Joseph J. Cirilano, for respondent.

Before COLINS, President Judge, and McGINLEY, J., and RODGERS, Senior Judge.

COLINS, President Judge.

Consol Pa Coal Company (employer) petitions for review of an order of the Workmen's Compensation Appeal Board (Board) affirming a referee's decision to award disability benefits to Steven Bardos (claimant) under Section 301(c)(1) of the Workers' Compensation Act (Act).[1] We reverse.

The facts as found by the referee are that the claimant filed a claim petition in 1991 alleging that he became disabled on April 1, 1990 because of a pulmonary injury suffered while in the course of employment. In 1988, the claimant had received compensation benefits for facial disfigurement. As a result of the 1988 injury, the claimant has been treated by Dr. Daniel Iracki for asthma, sinusitis, and rhinitis. In September 1990, Dr. Iracki released the claimant to return to work but advised the claimant to avoid exposure to dust and to avoid exertion.

The claimant returned to work, but he experienced breathing difficulty and chest pains when exposed to dust. On October 3, 1991, Dr. Iracki advised the claimant to discontinue working.

Dr. David Laman, who examined the claimant on March 23, 1992, testified on behalf of the employer that the claimant does not suffer from a definable pulmonary impairment. Dr. Laman stated that the claimant had some obstruction but that the claimant was not suffering from an asthmatic condition and that the claimant's work as a coal miner was not a contributing cause to any impairment.

Dr. Gilbert Friday, also testifying on behalf of the employer, examined the claimant on April 6, 1992. He too stated that the claimant is not asthmatic. He diagnosed the claimant as suffering from allergic rhinitis and sinusitis, but testified that the claimant's exposure to coal dust exacerbated his condition. All three doctors agreed that the claimant's condition would improve if he discontinued smoking cigarettes.

The referee found that the claimant and Dr. Iracki were credible witnesses and that Dr. Iracki had provided unequivocal medical testimony as to the claimant's condition. The referee rejected the testimony of Drs. Laman and Friday as not credible and as equivocal. The referee therefore concluded that the claimant sustained his burden of

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 411(1).

proving disability, and he awarded benefits from April 1, 1990 until September 8, 1990 and from October 3, 1991 through the present and into the indefinite future. On further appeal, the Board affirmed the referee's decision.

The employer now contends (1) that substantial evidence does not support a finding that the claimant suffered a work-related injury; (2) that the referee erred in finding that the testimony provided by the employer's medical experts was equivocal; (3) that substantial evidence does not support the finding that the claimant is presently unable to return to work; and (4) that the referee failed to make crucial findings of fact with regard to "alternate theories of recovery" made by the claimant.[2]

■■■ Where the causal connection between employment and injury is not obvious, the claimant bears the burden of establishing that connection through unequivocal medical testimony. *Shelestak v. Workmen's Compensation Appeal Board (Bethlehem Mines Corporation)*, 131 Pa.Commonwealth Ct. 582, 571 A.2d 516 (1990). The referee, as ultimate fact finder, is the sole authority for determining the weight and credibility of evidence, and he is free to accept or reject the testimony of any witness, including medical witnesses, in whole or in part. *Casuccio v. Workmen's Compensation Appeal Board (Scheidemantle)*, 72 Pa.Commonwealth Ct. 270, 456 A.2d 1117 (1983). Thus, the primary issue is whether the credible evidence presented by Dr. Iracki was unequivocal in supporting his diagnosis that the claimant suffers from a work-related asthmatic condition that would be exacerbated by continued exposure to coal dust.

Dr. Iracki, who was deposed on June 10, 1992, stated that the claimant suffers from asthma and asthmatic bronchitis. He advised the claimant not to return to work because continual exposure to dust and fumes would be a respiratory irritant. Dr. Iracki also stated that he never cleared the claimant to return to his job. He stated that the claimant's cigarette smoking affected the claimant's asthmatic condition, but the doctor concluded that smoking wasn't the sole cause "because he did not describe a lot of symptoms, he was describing to me before he had his injury in November of '88. I mean, if this patient never had the injury, never had the sinusitis, I would ascribe his symptoms of wheezing and chest condition to the cigarette smoking." Dr. Iracki did state that the claimant could return to work if the employer provided him with a mask that would filter out any respirable irritants (which the employer testified it did not have).

Significantly, however, the employer questioned Dr. Iracki about a methacholine challenge test. Although Dr. Iracki did not have the claimant undergo such a test, he stated that, if the test results were negative,

then I would be hard pressed to find anybody to say that you have a diagnosis of asthma or bronchial hyperactivity.

Q So in other words, if Mr. Bardos were to undergo the methacholine challenge test and it was negative, you would no longer make the diagnosis of asthma, and you would consider other possibilities; correct?

A Yes, I would. Like I said if it was negative, there are some false negative tests, but I would very much entertain that he really does not have asthma and there are probably other reasons for his symptomatology.

Dr. Iracki later testified that his diagnosis, if test results were negative, would change to chronic bronchitis, which does not entail difficulty with breathing. He stated that chronic bronchitis might result in "a little shortness of breath if you have a long coughing spell," but that it would not usually be a disabling entity. Finally, Dr. Iracki testified that the most frequent cause of chronic bronchitis in the world is cigarette smoking.

The day after Dr. Iracki's deposition, the claimant took the methacholine challenge test

---

**2.** Our scope of review is whether constitutional rights were violated, an error of law was committed, or whether necessary findings of fact are supported by substantial, competent evidence. *Russell v. Workmen's Compensation Appeal Board*

*(Volkswagen of America)*, 121 Pa.Commonwealth Ct. 436, 550 A.2d 1364 (1988), *appeal after remand on other grounds*, 143 Pa.Commonwealth Ct. 69, 598 A.2d 602 (1991).

at Jefferson Hospital. The statistical test results, as interpreted by Dr. William Sims, were negative.

Although Dr. Iracki testified unequivocally as to the claimant's condition to the extent that his observations were based upon examinations and the claimant's reported history, the doctor also stated that a negative reaction to the methacholine challenge test would cause him to consider an alternate diagnosis. Because the claimant did have a negative methacholine challenge test, we must interpret Dr. Iracki's testimony as equivocal when taken as a whole. *Kraushaar v. Workmen's Compensation Appeal Board (Doors, Inc.),* 142 Pa.Commonwealth Ct. 69, 596 A.2d 1233 (1991), *petition for allowance of appeal denied,* 534 Pa. 643, 626 A.2d 1160 (1992). Therefore, the Board erred in concluding that the claimant sustained his burden of proving a causal connection between his employment and his injury.[3]

Accordingly, we reverse the decision of the Board.

### ORDER

AND NOW, this 2nd day of February, 1995, the order of the Workmen's Compensation Appeal Board, in the above-captioned matter, is reversed.

---

3. Because we have resolved the employer's first issue in its favor, there is no need to address the remaining three issues raised.