**STATE WORKMEN'S INSURANCE FUND, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (WAGNER), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted April 26, 1996.

Decided June 11, 1996.

Rhonda A. Rudman, for Petitioner.

George Joseph, for Appellee.

Before SMITH and PELLEGRINI, JJ., and MIRARCHI, Senior Judge.

PELLEGRINI, Judge.

Lochbaum Rehabilitation Services and The State Workmen's Insurance Fund (collectively, Employer) appeal from an order of the Workmen's Compensation Appeal Board (Board) affirming a decision of a Workers' Compensation Judge (WCJ) granting Kelli Wagner's (Claimant) claim petition.

Claimant began working for Employer in 1989 as a part-time physical therapy assistant. Claimant eventually worked five days a week, although only working half days on Tuesdays and Thursdays. As a physical therapy assistant, Claimant was required to perform ultrasound treatments, hot-pack therapy and traction therapy. The ultrasound treatments required Claimant to utilize a machine with a round head attached to a handle. The head was placed on the patient's body and moved up and down by Claimant through movements of the wrist and elbow while alternating hands. She performed ultrasound treatments five hours out of an eight-hour workday.

In early 1991, Claimant broke a finger on her left hand in a non-work related accident. On February 5, 1991, while being treated for

that injury, she complained to Dr. David J. Mir of pain in the area of her left hand and wrist. Dr. Mir diagnosed her with DeQuervain disease,[1] a disease of the tendons operating the thumb, and placed her left wrist in a cast. Dr. Mir gave Claimant a note that said simply "DeQuervain" and told Claimant to give it to Employer who, because of his experience in the physical therapy field, would explain the disease to her. Claimant gave the note to Mr. Kenneth L. Lochbaum, the president of Employer, and told him she thought the disease was related to her employment.

On February 19, 1991, Claimant complained again to Dr. Mir, this time of pain in her right wrist. Dr. Mir again diagnosed her with DeQuervain disease and placed the right wrist in a cast. When the casting did not relieve symptoms in her left hand, an operation was performed in March of 1991. After surgery, Claimant attempted to return to work but was still experiencing pain in her wrist and could not continue to work. In April of 1991, Claimant then had surgery for the DeQuervain disease in her right hand, and again, Claimant attempted to return to work, but after working for several days in May, she was unable to continue because of pain and numbness in both her hands.

In September of 1991, while still off work, Dr. Mir diagnosed Claimant's condition as bilateral carpal tunnel syndrome. Claimant then sought a second opinion from Dr. George C. Hochreiter, who confirmed the diagnosis. On October 4, 1991, Dr. Hochreiter performed a surgical left carpal tunnel release, and then, on April 30, 1992, performed a surgical right carpal tunnel release.

On January 23, 1992, Claimant filed a claim petition under the Workers' Compensation Act[2] (Act), asserting that repetitive movements in her employment caused her to gradually develop DeQuervain disease and carpal tunnel syndrome which left her totally disabled.[3] At the hearings, Claimant, in addition to testifying herself, offered the testimony of Dr. Mir and Dr. Hochreiter in support of her claim. Claimant and her witnesses testified to the course of her injuries and that her DeQuervain's disease and carpal tunnel syndrome were the result of her administering ultrasound therapy.

Opposing the claim, Employer contended that the claim was neither timely nor work related. Mr. Lochbaum testified that Claimant never notified him that she believed the DeQuervain disease or the carpal tunnel syndrome were work related and, to the contrary, Claimant stated in August 1991 that it was not work related. His testimony was confirmed by Carrie J. and Cindy L. Keefer, both physical therapy assistants, who testified that they also heard Claimant tell Mr. Lochbaum in August of 1991 that she did not believe her injury was work related. Moreover, Mr. Lochbaum testified that Claimant only performed ultrasound about one hour per day, and it did not require any repetitive movements of the wrist.

Employer's medical expert, Dr. Louis J. Iorio, M.D., opined that based on his understanding of the procedures of ultrasound therapy and his review of a videotaped demonstration of Mr. Lochbaum performing ultrasound therapy, Claimant's job duties were not responsible for her carpal tunnel syndrome. In any event, he testified that when he examined Claimant on June 12, 1992, he found a full and painless range of motion in Claimant's left wrist and left thumb, and nearly full range of motion in the right wrist and a full painless range of motion in her right thumb. Based on his examination and understanding of the requirements of Claimant's job, Dr. Iorio stated that he would not place any restrictions on Claimant returning to her job.

---

1. DeQuervain's disease is defined as radial styloid tendovaginitis; fibrosis of the sheath of a tendon of the thumb. *Stedman's Medical Dictionary*, 446 (25th ed.1990).

2. Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4

3. In the claims proceeding, the parties stipulated to the following dates of disability:
   (a) February 19, 1991 through March 19, 1991;
   (b) March 28, 1991 through May 12, 1991;
   (c) May 16, 1991 through June 13, 1991; and
   (d) August 14, 1991 continuing to the present.

Finding the testimony of Dr. Mir, Dr. Hochreiter and Claimant to be credible while rejecting as incredible the testimony of Mr. Lochbaum, Ms. Cindy Keefer, Ms. Carrie Keefer and Dr. Iorio, the WCJ found that Claimant gave Employer timely notice[4] of her work-related injury in February 1991 and granted benefits. Employer appealed this decision to the Board which affirmed the WCJ. This appeal followed.[5]

Employer no longer disputes that Claimant gave timely notice of her original wrist and hand injury which was diagnosed as DeQuervain disease, but argues that the carpal tunnel syndrome is a separate injury rather than part of the original injury and requires separate notice. While Claimant left a telephone message with Employer that she had carpal tunnel syndrome, Employer contends she did not say that it was work related.

Section 311 of the Act, 77 P.S. § 631, requires that notice of injury be given to the employer within 120 days, and Section 312 of the Act, 77 P.S. § 632, requires that "[t]he notice referred to in section three hundred and eleven shall inform the employer that a certain employee received an injury described in ordinary language, in the course of his employment, on or about a specified time at or near a specified place." Whether a claimant has given notice to an employer in accordance with the requirements of the Act is a question of fact for the referee. *Kelly v.*

*Workmen's Compensation Appeal Board (Pepsi Cola Bottling Co. of Philadelphia)*, 166 Pa.Cmwlth. 618, 647 A.2d 275, 277, *petition for allowance of appeal denied*, 539 Pa. 693, 653 A.2d 1231 (1994).

Notice under this provision does not mean that a claimant must give employer an exact diagnosis, but instead, requires a reasonably precise description of the injury and that it was work related. Claimant complained of pain and discomfort in her wrists and hands that was diagnosed as DeQuervain disease. After the surgery for that condition, Claimant continued to experience pain in her wrists and hands, and the diagnosis, not the injury, changed to carpal tunnel syndrome. Because the diagnosis of carpal tunnel syndrome does not constitute a separate injury, but rather simply, another diagnosis of the initial injury, Claimant's original notice put Employer on notice of the injury to Claimant's wrists and hands and furnished Employer with an opportunity to investigate that injury.

Employer next contends that Claimant failed to sustain her burden that her injury was work related[6] because her medical witness' testimony was based upon the erroneous assumption that Claimant performed ultrasound therapy six hours per day, which is at odds with Claimant's testimony[7] that she only worked half days on Tuesdays and Thursdays and performed ultrasound therapy only five hours per day. An expert's

---

4. The only specific finding of fact the WCJ made concerning Claimant's notice to Employer was that Claimant gave proper notice to Mr. Lochbaum in February of 1991.

5. Our scope of review is limited to determining whether constitutional rights have been violated, an error of law has been committed, or necessary findings are not supported by substantial evidence. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa. Cmwlth.436, 550 A.2d 1364 (1988).

6. A claimant has the burden of proving a causal connection between his or her alleged disability and the injury sustained at work. *Fotta v. Workmen's Compensation Appeal Board (U.S. Steel/USX Corporation Maple Creek Mine)*, 534 Pa. 191, 626 A.2d 1144 (1993). Where the injury is not attributable to a specific incident, the causal relationship between the injury and the employment will seldom be obvious, and in those cases, unequivocal medical testimony is required. *Work-*

*men's Compensation Appeal Board v. Bethlehem Steel Corp.*, 23 Pa.Cmwlth. 454, 352 A.2d 571, 573 (1976). The determination of whether medical testimony is equivocal is a question of law fully reviewable by this court. Furthermore, in conducting such review, the medical witness' testimony must be taken as a whole and the conclusion should not rest upon a few words of the testimony taken out of context. *Lewis v. Workmen's Compensation Appeal Board*, 508 Pa. 360, 366, 498 A.2d 800, 803 (1985).

7. Concerning the length of time Claimant performed ultrasound therapy, she testified as follows:

Q: During what part of a typical eight hour work day would you perform ultrasound on patients?
A: Probably—most of the day. I would say five hours.
Q: At least five hours?
A: Yeah, I run it daily.

opinion based upon assumptions contrary to the established facts is worthless. *Lookout Volunteer Fire Company v. Workmen's Compensation Appeal Board,* 53 Pa.Cmwlth. 528, 418 A.2d 802 (1980). For example, in *Consol Pa. Coal Company v. Workmen's Compensation Appeal Board (Bardos),* 654 A.2d 292 (Pa.Cmwlth.), *petition for allowance of appeal denied,* —— Pa. ——, 670 A.2d 144 (1995), a claimant's medical expert testified that the claimant had asthma, but that if the claimant failed a methacholine challenge test, he would no longer make the diagnosis of asthma. We held that the medical expert's testimony was equivocal because the claimant had, in fact, failed a methacholine challenge test. Unlike *Consol,* Dr. Hochreiter's opinion is not based on an assumption contrary to the established facts.

▆▆▆▆ While on cross-examination, Dr. Hochreiter said that Claimant told him she performed ultrasound six hours per day. Dr. Hochreiter's opinion was not based on Claim- ant performing an ultrasound for a specific number of hours, but that Claimant's carpal tunnel syndrome was due to her performing ultrasound the greater percentage of her day.[8] Nowhere does he testify that if Claimant performed ultrasound therapy less than six hours a day, her carpal tunnel syndrome would not have been work related. Dr. Hochreiter's testimony was not based upon an assumption contrary to the facts of record, and as a result, his testimony that Claimant's carpal tunnel syndrome was caused by her employment was not equivocal.[9]

Because Claimant has given adequate notice of her work-related injury and has established by unequivocal medical testimony that she was disabled, the WCJ did not err in granting Claimant's claim petition. Accordingly, we affirm the order of the Board.[10]

### ORDER

AND NOW, this 11th day of June, 1996, we affirm the order of the Workmen's Com-

---

8. Dr Hochreiter testified on direct examination concerning the cause of Claimant's carpal tunnel system as follows:

Q: Now based upon your understanding of the work duties of Kelli Wagner as a physical therapy assistant as you've described them for us and as are contained in Hochreiter Deposition Exhibit 2, do you have an opinion within a reasonable degree of medical certainty whether the carpal tunnel bilaterally that you diagnosed in her case is related to her employment?
A: Yes, sir.
Q: And what is that opinion?
A: I believe that the carpal tunnel syndrome was related to her activities as a physical therapy aid.
Q: And can you tell us on what you base your opinion?
A: Secondary to her doing repetitive usage with both hands in the performance of ultrasound treatments.
(Reproduced Record p. 119).

On cross-examination, Dr. Hochreiter testified as follows:

Q: Considering that these types of activities aren't generally the classic case for carpal tunnel, why in this particular case would it cause carpal tunnel?
A: The only way I can answer that would be—and this is why I decided that it seemed appropriate, the number of hours that she described doing it. If she was working as a tech where she would have transported patients quite a bit of time and hand somebody a set of weights and walk them back and forth and there was a sufficient amount of break-up of time, then you'd start to say, well, I'm not certain. But she describes the greater percentage of her day as doing ultrasound treatment....
Q: In Miss Wagner's description to you of how many hours she performed this ultrasound, what did she indicate to you?
A: She stated that she would do it six to eight hours a day.
(R.R. pp. 126–127).

9. Substantial evidence is such evidence which a rational person could accept to support a finding. *Garnett v. Workmen's Compensation Appeal Board (Equitable Gas Co.),* 158 Pa.Cmwlth.100, 631 A.2d 705 (1993), *petition for allowance of appeal denied,* 537 Pa. 613, 641 A.2d 312 (1994). Because we hold that Dr. Hochreiter testified unequivocally that Claimant's carpal tunnel syndrome was caused by her work, it constitutes substantial evidence to support the WCJ's decision and we need not address Employer's argument that Dr. Mir's testimony is equivocal concerning the cause of Claimant's carpal tunnel syndrome.

10. Despite the fact that the parties stipulated to the dates of disability, Employer contends that Claimant did not meet her burden of proving an ongoing disability after June 12, 1992, when she was examined by Employer's physician, Dr. Iorio, who opined that at that time, she was capable of returning to work without restriction. Because this issue was not raised before the Board, we are precluded from reaching it. *Kelly,* 647 A.2d at 275.

pensation Appeal Board at No. A94–1728 dated October 26, 1995.