**CITY OF BUTLER, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (BOTSIS), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 5, 1997.

Decided March 12, 1998.

---

James D. Strader, Pittsburgh, for petitioner.

John J. Morgan, Butler, for respondent.

Before COLINS, President Judge, and SMITH and FRIEDMAN, JJ.

FRIEDMAN, Judge.

City of Butler (Employer) petitions for review of an order of the Workers' Compensation Appeal Board (WCAB) reversing the Workers' Compensation Judge's (WCJ) decision to dismiss Peter Botsis' (Claimant) Claim Petition and to grant Employer's Review Petition and affirming the WCJ's dismissal of Claimant's Review Petition.

On October 28, 1992, while in the course of his employment as a police officer with Employer, Claimant was firing a shotgun and other firearms. As Claimant was driving home after firing the firearms, he noticed blurred vision in his right eye. In July of 1993, Claimant underwent right eye surgery and was disabled from work from July 20, 1993 until September 19, 1993, when Claimant returned to work with no loss of earnings.[1] (WCJ's Findings of Fact, No. 5.) By one check, dated April 28, 1994, Employer's workers' compensation carrier paid Claimant a total of $3,640.00 in compensation for his period of disability.[2] In addition, the workers' compensation carrier paid all of Claimant's medical bills relating to his right eye treatment and surgery. (WCJ's Findings of Fact, No. 5.)

On September 6, 1994, Claimant filed a Claim Petition and a Petition to Review Compensation Benefits, each averring that, as a result of firing weapons on October 28, 1992, he sustained the permanent loss of use of his right eye. In his Claim Petition, Claimant stated, "[c]ompensation has been paid through Notice of Compensation Payable for a closed period." (R.R. at 4a.) Em-

---

1. Employer never issued a Notice of Compensation Payable, and, although Employer's workers' compensation carrier drew up an Agreement for Compensation, it was never executed. While recognizing that there was no formal acceptance of this disability, Employer admits that it has accepted this disability as work-related. (Employer's Brief at 10–11.)

2. Because Claimant was paid his regular salary while off work, Claimant turned this compensation check over to Employer. (WCJ's Findings of Fact, No. 4.)

ployer filed an Answer denying the allegations in the Claim Petition. Specifically, Employer stated that compensation was paid according to The Pennsylvania Workers' Compensation Act[3] and that Employer "DENIES LOSS OF SIGHT"; Employer also reserved the right to assert additional defenses pending investigation. (R.R. at 7a–8a.)

On February 27, 1995, Employer filed a Petition to Review Compensation Benefits (Review Petition), asserting that Claimant's eye condition is not work-related. Employer's Review Petition also stated that compensation benefits were paid pursuant to an agreement dated April 18, 1994. In his answer to Employer's Review Petition, Claimant denied that his blindness is unrelated to his work injury. In addition, Claimant pled that, because Employer paid medical benefits and compensation with full knowledge of the facts and an opportunity to investigate, its Review Petition was untimely. All three petitions were consolidated for hearings before the WCJ.

At the hearings, Claimant testified and also offered the deposition testimony of Robert C. Wheatall, O.D., an optometrist. Dr. Wheatall testified that he examined Claimant on June 2, 1993, due to symptoms which Claimant related to the October 28, 1992 work injury. Dr. Wheatall diagnosed Claimant with extensive hemorrhaging of the retina and scar tissue and retina tears or detachments, and he immediately referred Claimant to Edward Sorr, M.D., a retinal specialist. Dr. Wheatall testified that Claimant has permanent loss of vision in the right eye and

that he did not expect Claimant's vision to improve.

On cross-examination, Dr. Wheatall admitted that Dr. Sorr's report indicated that Claimant had a retinal vein occlusion, which was different than his own diagnosis of Claimant's condition. However, Dr. Wheatall explained that such a diagnosis requires a fluorosangiography which is outside the realm of his practice. Dr. Wheatall stated he would not disagree that Claimant had a retinal vein occlusion, and, further, Dr. Wheatall agreed that, in most cases, this is a spontaneous condition of a unknown etiology.

For its part, Employer presented the deposition testimony of John S. Kennerdell, M.D., who is board certified in opthamology and neuro-opthamology. Dr. Kennerdell testified that he examined Claimant in February of 1994 and again on December 28, 1994. (R.R. at 124a.) Dr. Kennerdell stated that Claimant was legally blind due to an atrophic retina, which resulted from a retinal vein occlusion of the right eye.[4] Dr. Kennerdell testified that a vein occlusion occurs when the vein that carries blood from the retina to the brain is blocked, and that, although the cause of the blockage is unknown, it is believed to be a kink in the blood vessel of a congenital type. Further, Dr. Kennerdell testified that the firing of weapons did not cause or aggravate Claimant's vein occlusion; in fact, Dr. Kennerdell stated that a vein occlusion is not associated with injuries.

During Dr. Kennerdell's testimony, Claimant's counsel objected to all questions relating to causation as being irrelevant and immaterial because Employer had already paid

---

3. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 1–1041.4.

4. Dr. Kennerdell testified that Claimant's examination

 showed an atrophic retina superiorly in the right eye, which was secondary to a blocked vein or a branch of the central vein, which served the superior right retina down to and including the macula, which is responsible for central vision or visual acuity. Also the area that was involved showed that there had been laser treatment .... My impression was he had an old treated branch, superior branch retinal vein occlusion of the right eye...[and] is considered legal[ly] blind[ ].

(R.R. at 125a–26a.)

 In a letter dated March 4, 1994, Dr. Kennerdell stated that Claimant's *"vein occlusion occurred in June of 1993, and he was treated in the summer of 1993.* ...His dilated examination reveals atrophy of the right superior retina *as a result of* the superior branch retinal vein occlusion."* (Kennerdell Exhibit B; R.R. at 174a.) (Emphasis added.) Additionally, an April 11, 1994 letter from Dr. Kennerdell stated, "[t]he superior right branch vein occlusion that was suffered by Peter Botsis, [sic] is not work related." (Kennerdell Exhibit C; R.R. at 175a.)

 We note that, despite these letters, on April 28, 1994, Employer's workers' compensation carrier paid Claimant workers' compensation benefits.

Claimant workers' compensation benefits. However, the WCJ overruled those objections, noting that neither a Notice of Compensation Payable nor an Agreement for Compensation had ever been executed. The WCJ also rejected the testimony of Claimant and Dr. Wheatall and accepted the testimony of Dr. Kennerdell as credible. (WCJ's Findings of Fact, No. 11.) Consequently, although the WCJ found that Claimant has permanently lost the use of his right eye for all practical intents and purposes, the WCJ, relying on Dr. Kennerdell's credible testimony, concluded that Claimant's loss of use of his right eye is not causally related to the firing of weapons on October 28, 1992. Therefore, the WCJ concluded that Claimant did not satisfy his burden of proof in his Claim and Review Petitions and denied and dismissed them. Further, the WCJ concluded that Employer met its burden of proof in its Review Petition and, therefore, granted Employer's Review Petition.

On appeal to the WCAB, Claimant argued that the WCJ erred when he denied Claimant's objections to Dr. Kennerdell's deposition testimony regarding causation. The WCAB agreed. Relying on our decision in *Kelly v. Workmen's Compensation Appeal Board (DePalma Roofing)*, 669 A.2d 1023 (Pa.Cmwlth.1995), *alloc. denied*, 546 Pa. 686, 686 A.2d 1314 (1996), the WCAB concluded that, because Employer acknowledged Claimant's eye injury as work-related by paying Claimant's disability benefits and medical expenses, Employer was estopped from denying the work-relatedness of the injury. Accordingly, the WCAB reversed the WCJ's decision to dismiss Claimant's Claim Petition and to grant Employer's Review Petition.[5]

Employer now petitions this court for review of the WCAB's order,[6] asserting that the WCAB erred as a matter of law when it estopped Employer from denying the work-relatedness of Claimant's specific loss.[7] Employer has presented the issue to us as "whether an employer's acceptance of a work-related injury estops the employer from denying compensability for a specific loss of the same body part alleged to be related to the work-related injury?" (Employer's Brief at 3.)

■ In essence, Employer argues that Claimant has two separate disabling injuries: his initial work-related right eye injury which disabled him from July 20, 1993 until September 19, 1993, and a non-work-related specific loss of his right eye. Employer asserts that it cannot be held to have admitted liability for the latter simply because it accepted responsibility for the former. We agree and, thus, conclude that Employer was not estopped from denying compensability for the specific loss and that the WCAB erred in concluding otherwise. Nevertheless, although recognizing Employer's right to challenge the work-relatedness of Claimant's specific loss, we conclude that Employer cannot succeed based on the record here.[8]

5. Under the Claim Petition, the WCAB awarded Claimant 66 2/3 percent of his wages for 275 weeks less disability benefits already paid to Claimant in the amount of $3,640.00. The WCAB affirmed the WCJ's order to dismiss Claimant's Review Petition.

6. Our scope of review is limited to determining whether an error of law was committed, whether constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. *Kelly.*

7. In this regard, Employer asserts that it was error for the WCAB to rely on *Kelly* to find Employer liable for Claimant's specific loss, contending that, contrary to the WCAB's determination, *Kelly* does not state that where an employer is held to have accepted compensability for an initial injury by virtue of cash payment, the payment constitutes an acceptance of the specific loss claim as well. Indeed, Employer points out

that in *Kelly* the court never decided the issue of whether the employer was liable for the specific loss asserted by the claimant. We agree.

In *Kelly*, the claimant filed two claim petitions. In one petition, he alleged that he was disabled due to head injuries from an assault, and in the other, he sought specific loss benefits for scarring to his head, face and neck from the assault. This court affirmed the decision to grant the claimant weekly disability benefits, concluding that the employer's cash payments to the claimant and subsequent failure to file a timely notice of compensation denial was an admission of liability which bound the employer as if it had filed a notice of compensation payable. However, we never decided whether the employer also was liable for specific loss benefits because the claimant had waived this issue.

8. It is well recognized that this court may affirm an order of an administrative tribunal where grounds for affirmance exist, even if the reasons

■ Because Employer has accepted the vein occlusion which caused the initial disability as work-related, to avoid liability for Claimant's specific loss, Employer would have had to establish an *independent, non-work-related cause* of the specific loss disability. *Cf. Beissel v. Workmen's Compensation Appeal Bd. (John Wanamaker, Inc.)*, 502 Pa. 178, 465 A.2d 969 (1983) (stating that in cases where an agreement or notice of compensation payable has been filed, to terminate the employer's liability, the employer has the burden of showing that an independent cause of the disability arose after the filing of the notice of compensation payable). However, Employer is unable to do that here.

Here, the testimony of Employer's own medical expert, which the WCJ accepted, reveals that Claimant's specific loss *resulted from* the same vein occlusion for which Claimant underwent surgery [9] and for which Employer has admitted liability. Consequently, Dr. Kennerdell's testimony cannot establish an independent, non-work-related cause of the specific loss.

■ Although we recognize that Dr. Kennerdell stated that the vein occlusion is not work-related, this portion of his testimony contradicts admitted facts, i.e., the work-relatedness of the initial disability. Therefore, to the extent that Dr. Kennerdell's testimony contradicts admitted facts, it is not competent and cannot support Employer's position.[10] *See Newcomer v. Workmen's Com-*

*pensation Appeal Bd. (Ward Trucking Corp.)*, 547 Pa. 639, 692 A.2d 1062 (1997) (stating that medical expert's testimony which is based on a false medical history is incompetent as a matter of law); *State Workmen's Insurance Fund v. Workmen's Compensation Appeal Bd. (Wagner)*, 677 A.2d 892 (1996) (stating that a medical expert's opinion which is based upon assumptions contrary to established facts is worthless).

■ Accordingly, Claimant is entitled to specific loss benefits for the loss of use of his right eye,[11] and the decision of the WCAB is affirmed.

### ORDER

AND NOW, this 12th day of March, 1998, the order of the Workers' Compensation Appeal Board, dated June 4, 1997, at A96–0274, is hereby affirmed.

---

relied upon by that tribunal in reaching its decision were incorrect. *LTV Steel Co. v. Workmen's Compensation Appeal Bd. (Morrow)*, 690 A.2d 1316 (Pa.Cmwlth.1997), *appeal granted*, 548 Pa. 675, 698 A.2d 597 (1997).

9. *See supra* note 5 and accompanying text.

10. To give effect to Dr. Kennerdell's testimony would contradict admitted facts, and, further, it would allow Employer to relitigate whether the initial disability was work-related. *See Noverati v. Workmen's Compensation Appeal Bd. (Newtown Squire Inn)*, 686 A.2d 455 (Pa.Cmwlth.1996) (stating that where the work-relatedness of the claimant's back injury was determined in a prior proceeding, the employer could not base the grounds for termination or suspension on the fact that the claimant's disability is not now work-related because, in fact, it never was); *Hebden v. Workmen's Compensation Appeal Bd.*

*(Bethenergy Mines)*, 142 Pa.Cmwlth. 176, 597 A.2d 182 (1991) (discussing issue preclusion in an occupational disease case), *rev'd on other grounds*, 534 Pa. 327, 632 A.2d 1302 (1993); *cf. Nasim v. Shamrock Welding Supply Co.*, 387 Pa.Super. 225, 563 A.2d 1266 (1989), *appeal denied*, 525 Pa. 619, 577 A.2d 890 (1990) (stating that judicial admissions may be contained in pleadings, stipulations and other like documents and that these admissions cannot later be contradicted by the party making them).

11. Because Dr. Kennerdell stated that Claimant is legally blind due to an atrophic retina which resulted from the vein occlusion, and because Employer accepted this vein occlusion as work-related, Claimant met his burden of proof on causation. Further, the WCJ found that Claimant proved that he lost the use of his right eye for all practical intents and purposes, and Employer does not challenge this finding.