Treva YOUNG, Petitioner,

v.

**WORKERS' COMPENSATION APPEAL BOARD (AM–GARD), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 22, 2002.

Decided Feb. 13, 2003.

---

Sara J. Klein, Pittsburgh, for petitioner.

James D. Strader, Pittsburgh, for respondent.

BEFORE: COLINS, President Judge, and SMITH–RIBNER, Judge, and FLAHERTY, Senior Judge.

OPINION BY President Judge COLINS.

Treva Young (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board) that denied the review and reinstatement petition she filed against Am–Gard (Employer), and granted Employer's review petition seeking a change in the description of Claim-

ant's injury in the Notice of Compensation Payable (NCP). We affirm.

The facts as found by the Workers' Compensation Judge (WCJ) are summarized as follows. Claimant sustained an injury on October 11, 1999, after having inhaled toxic fumes in the course of her employment as a security guard. On that day, construction work being performed, involving the laying of concrete, exposed Claimant to cement sealer. Claimant later began to experience a severe headache and vomiting, and ultimately went to the hospital at which she received a breathing treatment. She began to treat with Dr. Abdul Khan, M.D., who admitted Claimant to the hospital on October 18, 1999 for an initial period of eight days. One day after her release, Dr. Khan again admitted Claimant to the hospital for an additional two days. Employer issued a temporary NCP from October 11, 1999 through January 8, 2000, for an exacerbation of asthmatic bronchitis. On January 18, 2000, the temporary NCP was converted to an NCP describing Claimant's injury as exacerbation of asthmatic bronchitis, and on that same date, Claimant executed a supplemental agreement reflecting her return to work on January 16, 2000. Claimant worked as a security guard in Employer's garage, where she was exposed to fumes and cold air, until February 12, 2000, when she discontinued working because she again began to experience breathing difficulties.

On April 3, 2000, Claimant filed her review and reinstatement petition, claiming that her breathing condition has deteriorated, resulting in a decrease in earning power and asserting that the description of her work injury on the NCP as "exacerbation asthmatic bronchitis" was erroneous. Claimant sought to have included in the description of her work-related injury asthma, asthmatic bronchitis, active airways disease and a condition called paradoxical vocal cord dysfunction.[1] WCJ Hearing Transcript, January 25, 2001, p. 5. Employer filed its review petition on February 26, 2001, asserting that the description of Claimant's work-related injury on the NCP should be changed to "irritation of upper respiratory system."

Employer presented the deposition testimony of Dr. Gregory Fino, a Board-certified doctor of internal medicine with a subspecialty in pulmonary disease. Dr. Fino testified that he believed his original diagnosis of exacerbation of asthmatic bronchitis was incorrect, following his subsequent review of additional records of Claimant's medical treatment and the depositions of Claimant's medical experts. He opined that Claimant sustained only a transitory irritation of her upper respiratory system as a result of her exposure to the cement sealant, and that Claimant suffers from paradoxical vocal cord dysfunction, which pre-dates and is unrelated to her exposure to the cement sealant in October 11, 1999.

Claimant presented the deposition testimony of two physicians, Dr. Abdul Khan, a Board-certified physician in internal medicine, who has been Claimant's family physician since September 1996, and Dr. Murray Sachs, also Board-certified in internal medicine, who treated Claimant on May

---

1. Claimant's medical expert, Dr. Gregory J. Fino, M.D. described paradoxical vocal cord dysfunction in his deposition. He indicated that persons who have this condition have vocal cords that "close up" when they breathe in rather than open up. This malfunction creates a "crowing-type sound" that may appear to be "wheezing heard more in the center part of the chest over the vocal cord area." Fino Deposition, p. 13–14.

11, 2000, when she was admitted to Shadyside Hospital. Dr. Khan opined that Claimant experienced acute asthmatic bronchitis as a result of her exposure to cement sealant in October 1999, and that Claimant suffers from severe recurrent asthmatic bronchitis, reactive airways disease, and vocal cord dysfunction as a result of her exposure at work. Dr. Sachs, who is not certified in pulmonary disease, opined that Claimant suffers from industrial bronchitis and vocal cord dysfunction, which he believes to have been caused by her exposure at work to the cement sealant.

The WCJ made the following pertinent factual findings:

13. [Dr. Fino] saw the claimant on December 10, 1999, and at that time was of the opinion that the claimant had an exacerbation of asthmatic bronchitis based on the history presented. At the time of that examination, Dr. Fino was of the opinion that claimant had recovered from the exacerbation of her asthma and felt she could return to work. Following Dr. Fino's examination, he had an opportunity to review additional records of medical treatment for the claimant, and following a review of these additional documents, Dr. Fino opined that his original [sic] of exacerbation of asthmatic bronchitis was incorrect. He felt that the claimant had an irritation of her upper respiratory system on October 11, 1999, as a result of exposure to the cement sealant, but the effect was transitory and by the time the [sic] saw claimant in December 1999, all the effects of the irritation had long since resolved. Dr. Fino believed the claimant's paradoxical vocal chord dysfunction pre-existed her exposure based on evidence of hoarseness and other symptoms presented in medical records of Dr. Khan prior to October 1999. Dr. Fino also noted that treatment of bronchodilators, which should have had an affect on asthma, had absolutely no affect on the claimant. He also believed that the location of the wheezing in the claimant's chest did not indicate asthma but rather was consistent with paradoxical voice chord dysfunction. Dr. Fino went on to explain that it was not uncommon to misdiagnose someone with asthma who in fact had paradoxical voice chord dysfunction.

14. Pulmonary function studies conducted by Dr. Fino were normal and, according to Dr. Fino's testimony, if the claimant had asthma there would be an abnormality present.

15. Dr. Fino further testified that the claimant's paradoxical vocal chord dysfunction was not work-related. He opined that there are a number of causes of paradoxical vocal chord dysfunction including neurological problems, heartburn, and psychological problems. Dr. Fino was unaware of any medical literature supporting the inhalation of anything as a cause for paradoxical vocal chord dysfunction.

The WCJ found Employer's medical expert, Dr. Fino, more persuasive and credible than Claimant's medical experts, and thus accepted Employer's assertion that Dr. Fino's initial diagnosis was incorrect, and that Claimant's true condition was paradoxical vocal cord dysfunction, which pre-dated Claimant's exposure to cement sealant fumes. The WCJ accepted Dr. Fino's second diagnosis and conclusion that Claimant suffered only from irritation of her upper respiratory system as a result of her exposure to the sealant, and that she had recovered from that condition at

the time of his examination of her in December 1999. Based on those determinations, the WCJ concluded that Claimant had failed to meet her burden of proving either that her benefits should be reinstated or that the description of her work-related injury should be modified. The WCJ also determined that Employer had met its burden of establishing that Claimant's work-related injury should be characterized as "irritation of her upper respiratory system."

Claimant appealed the WCJ's decision to the Board, which affirmed the WCJ, concluding that substantial evidence supported the WCJ's decision. On appeal to this Court,[2] Claimant raises the following issues: (1) Whether the testimony of Employer's medical expert, that Claimant has not suffered from asthma, is incompetent because it lacks a foundation in the record and is contrary to the facts of record; (2) Whether Employer's medical expert's testimony is incompetent in that it is contrary to facts admitted in the NCP; (3) Whether the WCJ's decision is supported by substantial evidence; (4) Whether the WCJ erred by failing to determine whether Claimant's disability, that is, "irritation to her upper respiratory system," has recurred as a result of "irritation of the upper airways"; and (5) Whether the WCJ erred by failing to determine whether Claimant's medical bills were related to her work related injury.

In support of a review petition where a claimant seeks reinstatement of benefits, the claimant must show that, through no fault of her own, her earning power is once again adversely affected by the disability and that the disability that caused the original claim continues. *Latta v. Workmen's Compensation Appeal Board (Latrobe Die Casting Co.)*, 537 Pa. 223, 642 A.2d 1083 (1994). Additionally, when a party, either a claimant or an employer, seeks to correct an allegedly incorrect description of an injury as indicated on an original NCP, the party seeking the modification of the description bears the burden "to prove that a material mistake of fact or law was made at the time the notice of compensation payable was issued." *Birmingham Fire Insurance Co. v. Workmen's Compensation Appeal Board (Kennedy)*, 657 A.2d 96, 99 (Pa.Cmwlth.1995) (citing *Hartner v. Workmen's Compensation Appeal Board (Phillips Mine & Mill, Inc.)*, 146 Pa.Cmwlth. 167, 604 A.2d 1204, *petition for allowance of appeal denied*, 531 Pa. 662, 613 A.2d 1210 (1992)).[3]

The thrust of Claimant's argument in this appeal is that, although Dr. Fino's testimony may support the proposition that Claimant does have paradoxical vocal cord dysfunction, his testimony is not competent to support the WCJ's findings that Claimant does not have asthma, because the indicators he relied upon in developing his opinion, may have been applied during a time when Claimant was asymptomatic for asthma, and therefore, his reliance

**2.** This Court's scope of review in an appeal from a Board decision is limited to determining whether substantial evidence supports necessary findings of fact, whether the WCJ committed an error of law and whether any constitutional rights were violated. 2 Pa.C.S. § 704.

**3.** We note that Claimant never raised the question of whether Employer should be precluded from seeking a modification of the NCP description of Claimant's injury based upon our Supreme Court's decisions in *Beissel v. Workmen's Compensation Appeal Board (John Wanamaker, Inc.)*, 502 Pa. 178, 465 A.2d 969 (1983), and *Barna v. Workmen's Compensation Appeal Board (Jones & Laughlin Steel Corp.)*, 513 Pa. 518, 522 A.2d 22 (1987).

upon those indicators as a means of reaching his conclusions is questionable. Thus, Claimant first contends that the Board erred in affirming the WCJ's decision, because Dr. Fino's testimony that Claimant has not suffered from asthma is incompetent in that it lacks foundation and is contrary to facts of record.

In challenging the competency of Dr. Fino's testimony, Claimant first refers to the Pennsylvania Supreme Court decision in *Newcomer v. Workmen's Compensation Appeal Board (Ward Trucking Corporation)*, 547 Pa. 639, 692 A.2d 1062 (1997). In that decision, a WCJ granted a claimant's reinstatement petition seeking benefits for a purported work-related injury to his shoulder. The claimant offered the testimony of a physician who he consulted two years after his initial injury. The physician testified that, in his opinion, the claimant's shoulder injury was the result of the accident that caused his work-related injury. However, the physician testified that he had never reviewed the claimant's hospital medical records from the work accident and had not treated him at the time of the accident. His opinion was based only on the claimant's description of his own medical history. The Court concluded that the physician's testimony was incompetent because it was based only on the claimant's own statement, and completely unsupported by the other factual matters of record, including an absence in the hospital and treatments record of any reference to a shoulder problem, and the absence of a complaint by the claimant of a shoulder problem for two and one-half years following the work accident.

Claimant's reliance on *Newcomer* is misplaced. *Newcomer* is distinguishable from the present case because here, Dr. Fino did examine Claimant shortly after her work-related injury occurred, and ultimately reviewed Claimant's medical history and the depositions of Claimant's medical experts before rendering his opinion that Claimant did not incur an asthma-related injury as a result of her exposure at work to the cement sealant on October 11, 1999.

Claimant also relies upon this Court's decision in *Consol Pa Coal Company v. Workmen's Compensation Appeal Board (Bardos)*, 654 A.2d 292 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 543 Pa. 697, 670 A.2d 144 (1995). In that case, the claimant's treating physician had examined the claimant, reviewed his medical history, and diagnosed the claimant as having asthma and asthmatic bronchitis. However, the physician also stated that if the claimant had a negative result from a methacholine challenge test, he would not have diagnosed asthma. The claimant later took the methacholine test and obtained a negative result. This Court concluded that "[a]lthough [the physician] testified unequivocally as to the claimant's condition to the extent that his observations were based upon examinations and the claimant's reported history, the doctor also stated that a negative reaction to the methacholine challenge test would cause him to consider an alternative diagnosis." *Id.* at 295 The Court thereby concluded that the physician's testimony was equivocal when taken as a whole.

■ In this case, Claimant asserts that Dr. Fino's testimony is similarly incompetent because, although the two pulmonary function studies he performed showed no abnormality, there is record evidence of other pulmonary function studies that do show an abnormality. However, although Dr. Fino testified that a person with asthma who is asymptomatic at the time of

such a study would show no abnormality, he also stated that a person with asthma would show abnormalities on such studies if they are symptomatic at the time the tests are preformed.[4] Dr. Fino testified that the pulmonary function studies he conducted were performed at a time when Claimant was symptomatic. Thus, because there was a proper foundation for his opinion that, based upon the pulmonary function studies he conducted at a time when Claimant was symptomatic, she showed no abnormality, and thus does not have asthma, his testimony is competent and does constitute substantial evidence in support of the WCJ's factual finding that Claimant suffers from paradoxical vocal cord dysfunction rather than asthma.

 This is true despite the record evidence that other pulmonary function studies showed restrictive function. The WCJ, as fact finder, may properly determine the weight to accord evidence. *Alpo Petfoods, Inc. v. Workmen's Compensation Appeal Board (Neff)*, 663 A.2d 293 (Pa. Cmwlth.1995). Furthermore, the testimony of a single medical expert provides a reasonable basis for a WCJ's factual determination even when the record contains conflicting evidence. *Robertshaw Controls Company v. Workers' Compensation Ap-* *peal Board (Raffensperger)*, 710 A.2d 1232 (Pa.Cmwlth.1998).

Claimant also asserts that Dr. Fino's testimony is incompetent because he based his opinion in part on evidence that bronchodilators did not improve Claimant's condition. Dr. Fino testified that bronchodilators typically help asthmatics, but that his review of the records indicates that they did not help Claimant's symptoms. Claimant points to evidence that suggests that the use of bronchodilators did help her. However, on cross-examination, Dr. Fino indicated that the steroids in bronchodilators sometimes make patients experience a feeling of well-being. He opined that this subjective sensation would explain Claimant's reports of feeling better after the use of the bronchodilators. Again, the WCJ, as fact-finder performed his role, and gave greater weight to Dr. Fino's opinion than the records and medical testimony of Claimant's expert suggesting that the bronchodilators did help Claimant's condition.

Finally, Claimant contends that record evidence showing that Claimant did have peripheral as well as central wheezing, contrary to Dr. Fino's testimony, renders his opinion incompetent. Claimant points

---

4. Claimant asserts that Dr. Fino acknowledged that asthma can be asymptomatic, and not always produce an abnormal pulmonary study. However, when Claimant's counsel questioned Dr. Fino regarding the pulmonary studies and their import, he indicated that, in a true asthmatic, pulmonary studies even in an asymptomatic asthmatic would typically show some abnormality:

> Q. Therefore, one can also have intermittent normal pulmonary function studies; is that correct?
> A. Sure; but not when someone is symptomatic. And, actually, to get to absolutely normal lung function studies in an asthmatic, that's very, very unusual. There will be

some telltale abnormality, but it's a moot point. If you're examining a symptomatic patient with symptoms consistent with asthma and they truly have asthma, something is going to be abnormal.

Fino Deposition, p. 44–45

Dr. Fino also testified as follows on page 45 of his deposition:

> Q. If the patient is asymptomatic at the time, would the pulmonary function studies rule out a condition of asthma, as an underlying condition of asthma?
> A. No. There are instances when you are completely asymptomatic that you may have normal lung function. That's pretty, pretty unusual though.

out that the deposition testimony of Dr. Kahn, one of Claimant's medical experts and treating physicians, undermines Dr. Fino's opinion that Claimant does not have asthma. Dr. Khan testified that when he examined Claimant on October 13, 1999, he found wheezing on both sides of her lungs, i.e., bilateral or peripheral wheezing. Additionally, Claimant's other expert and treating physician, Dr. Sachs, noted that when he examined Claimant he found bilateral wheezing. Claimant contends that in light of the testimony of Claimant's experts regarding the area of wheezing, Dr. Fino's testimony is incompetent. As with Claimant's contentions regarding the pulmonary function studies and bronchodilators, the existence of contradictory evidence does not render Dr. Fino's opinion incompetent. *Robertshaw.*

Dr. Fino opined that the three factors discussed above—the normal pulmonary function studies during a period when Claimant was symptomatic, the ineffectiveness of the bronchodilators, and the location of Claimant's wheezing—strongly indicate not only that Claimant has paradoxical vocal cord dysfunction that pre-exists her work-related injury, but also that she does not have asthma. While it is apparently possible for an individual to have both conditions, and possible for the symptoms of one to mimic the symptoms of the other, Dr. Fino unequivocally testified as to the reasons why he believed Claimant suffers only from the non-work-related and pre-work injury paradoxical vocal cord dysfunction. As concluded by the Board, Claimant here essentially asks the Court to reweigh the evidence and reassign credibility. This we cannot do.

Claimant next argues that Dr. Fino's testimony is incompetent because it is contrary to facts admitted in the NCP.[5] Claimant first cites *City of Butler v. Workers' Compensation Appeal Board (Botsis)*, 708 A.2d 1306 (Pa.Cmwlth.1998). In that case, the claimant, a police officer, was using firearms in the course of his employment. While driving home that day he experienced blurred vision in his right eye. Approximately nine months later the claimant underwent eye surgery, and he was disabled from work following surgery for nearly two months, at which time the claimant returned to work with no loss of earning power. Approximately seven months later, and without the employer having formally accepted the work-related nature of the claimant's injury, the employer's workers' compensation insurer paid the claimant compensation for his period of disability, and paid the claimant's medical expenses related to his eye surgery. Shortly thereafter, the claimant filed a claim petition and a petition to review compensation benefits, through which the claimant asserted that he had sustained the permanent loss of use of his right eye as a result of the above-mentioned use of firearms in the course of his employment. The employer denied the allegations in the petitions, and later filed a petition to review compensation benefits asserting that the claimant's eye condition was not work-related. In response to the employer's petition, the claimant asserted that, because the employer had "paid medical benefits and compensation with full knowledge of the facts and an opportunity to investigate, its Review Petition was untimely." *Id.* at 1308.

In *City of Butler*, the testimony of the claimant's medical expert on cross-exami-

5. We note that Claimant did not raise this specific competency issue in her appeal to the Board.

nation suggested that the opinion of another expert might have been correct, and that the injury diagnosed by that other expert in most cases is a "spontaneous condition of unknown etiology." *Id.* The employer's medical expert provided a similar diagnosis and stated that the use of firearms would not have caused the condition that resulted in the permanent loss of use of the claimant's eye. During the course of examination of that witness, the claimant's counsel **consistently objected** to the testimony as irrelevant and immaterial because of the employer's act of purportedly accepting liability by virtue of its payment of compensation and medical costs. The WCJ in that case, noting that the employer had never filed an NCP, overruled all those objections. The WCJ, finding the employer's expert more credible than the claimant's, concluded that the claimant had not satisfied his burden of proof and denied the claimant's petition while granting the employer's. On appeal, the Board reversed the WCJ, concluding that the employer "was estopped from denying the work-relatedness of the injury," because it had paid the claimant benefits and his medical bills. In reviewing the employer's appeal of the Board's decision, this Court agreed with the employer that the Board erred in concluding that employer was estopped from denying compensation for the alleged specific loss of the claimant's eye by virtue of accepting liability for the work-related injury. Nevertheless, the Court affirmed the Board's decision because the employer had "accepted the vein occlusion which caused the initial disability as work-related, to avoid liability for Claimant's specific loss, Em-

ployer would have had to establish an independent, non-work-related cause of the specific loss disability." *Id.* at 1310. The Court opined that the employer's expert indicated that "the Claimant's specific loss *resulted from* the same vein occlusion for which Claimant underwent surgery and for which Employer has admitted liability." *Id.* (Emphasis in original; footnote omitted.) Thus, the Court concluded that testimony could not establish an independent, non-work-related cause of the specific loss. The Court concluded that the expert's statement, that the vein occlusion was not work-related, was contradictory based on the admitted fact that the initial disability, i.e., the reason for the surgery, was work-related. Such contradictions rendered the testimony incompetent. *Id.*

We note that, contrary to the facts in *City of Butler*, Claimant in this case posed no objections to the admission of Dr. Fino's deposition, or asserted that the opinions therein were incompetent, as indicated in the colloquy below from the WCJ's hearing on January 25, 2001:

> ATTORNEY MAZESKI: I have a deposition from Dr. Fino.
>
> JUDGE OLIVER: This transcript will be marked as Employer's Exhibit B.... Any Objection?
>
> ATTORNEY KLEIN: No.

Hearing Transcript, p. 20.

Because Claimant never challenged the admission of Dr. Fino's deposition and never raised this particular competency issue before the WCJ, we conclude that *City of Butler* is distinguishable.[6]

Claimant also relies upon our decision in *Geriatric & Medical Centers v. Workmen's*

---

**6.** We also note, as indicated above, that Claimant has never asserted that Employer is precluded from seeking a change to the description of the injury in the NCP under the

Pennsylvania Supreme Court's decision in *Beissel.* In *Beissel* and *Barna*, the Supreme Court set forth the criteria for WCJs, the Board, and the Courts to consider when pre-

*Compensation Appeal Board (Facey),* 167 Pa.Cmwlth.590, 648 A.2d 1289 (1994), *petition for allowance of appeal denied,* 541 Pa. 644, 663 A.2d 695 (1995), in which this Court, after thoroughly discussing the distinctions noted by the Supreme Court in its decisions in *Beissel* and *Barna,* regarding the question of when an employer is bound by an NCP and when an employer can seek a change to an initial admission of liability in an NCP, concluded that the employer in that case was bound by the NCP because the employer had ample time and opportunity to investigate the claimant's alleged injury before filing the NCP, and did not seek to have the NCP set aside until almost two years after filing the NCP, thus making the Supreme Court's decision in *Barna* distinguishable. Again, however, Claimant never specifically raised *Beissel,* or sought to challenge Employer's right under Section 413(a) of the Act to seek to change the description of Claimant's injury in the proceedings before the WCJ and the Board. Thus, we conclude on waiver grounds that the *Geriatric & Medical Centers* decision is inapplicable.

Claimant next argues that the WCJ's decision denying Claimant's reinstatement and review petition is not supported by substantial evidence. This argument is founded on Claimant's primary argument that Dr. Fino's testimony is incompetent. As discussed above, Dr. Fino's testimony is competent, and therefore, in accordance with our discussion above, we conclude that Dr. Fino's testimony constitutes substantial evidence in support of the WCJ's decision denying Claimant's review and reinstatement petitions.

■ Claimant argues that, even if the WCJ correctly denied her petitions, and correctly granted Employer's review petition, the WCJ erred in terminating her benefits without first rendering factual determinations as to whether Claimant became disabled in February 2000 as a result of a recurrence or worsening of the "irritation of the upper airways" that was caused by her inhalation of the cement sealer. We disagree. All that the WCJ was required to consider was Claimant's review petition, seeking a change in the NCP description of her injury, and her reinstatement petition. The WCJ, having determined that Claimant's condition was caused not by her work injury, but by her paradoxical vocal cord dysfunction, was not required to make such factual findings.

■ The final issue Claimant raises is whether the WCJ erred by failing to make determinations regarding whether Claimant's medical bills are related to her work injury. Employer argues that employers and insurers are not required to remit payment for services and medical treatment until a medical provider has submitted bills to the employer or insurer. In this case, there is no indication that Claimant's medical providers ever submitted bills in accordance with 34 Pa.Code § 127.202, which states, "[until] a provider submits bills on one of the forms specified in [34 Pa.Code] § 127.201 ... insurers are not required to pay for the treatment billed." However, the record clearly shows that Employer accepted responsibility for Claimant's work-related injury from the date of injury on October 11, 1999 through January 18, 2000, the date when Claimant executed the supplemental agreement with Employer, reflecting her return to work. It is reasonable therefore to require Employer to pay the Claimant's hospitalization and medical bills that were incurred within that time frame.

sented with review petitions seeking to change descriptions in NCPs of work-related injuries on the basis of an alleged mistake of fact, under Section 413(a) of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* (Act), 77 P.S. § 771.

**1246**

Accordingly, Employer is directed to pay for Claimant's hospital and medical bills related to her work injury incurred between October 11, 1999 and January 18, 2000. In all other respects, the order of the Board is affirmed.

### ORDER

AND NOW, this 13th day of February 2003, Employer is directed to pay Claimant's hospital and medical bills incurred between October 11, 1999 and January 18, 2000. The order of the Pennsylvania Workers' Compensation Appeal Board is affirmed in all other respects.