**Julia MOREY, widow of John Morey, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (BETHENERGY MINES, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Aug. 16, 1996.

Decided Oct. 31, 1996.

Blair V. Pawlowski, for Petitioner.

John J. Bagnato, for Respondent.

Before SMITH and FLAHERTY, JJ., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

Julia Morey (Claimant) petitions for review of an order of the Workmen's Compensation Appeal Board (Board) which reversed the decision of a workers' compensation judge (WCJ) granting Claimant's fatal claim petition. We reverse.

On February 1, 1993, Claimant filed a fatal claim petition against Bethenergy Mines, Inc. (Employer) alleging that her husband, John Morey (Decedent), died as a result of work-related silicosis and anthraco-silicosis. Employer filed a timely answer denying the allegations and the case was assigned to a WCJ.

The following facts are summarized from the comprehensive findings of fact issued by the WCJ. Decedent was relatively well until the spring of 1991, at which time he was admitted to Presbyterian University Hospital for tests. A bone marrow aspiration demonstrating lymphoma, the primary site of metastatic carcinoma, was received after his discharge. On July 16, 1991, Decedent was

admitted to Lee Hospital. Following abdominal scans and a biopsy of a deep cervical lymph node, the attending physicians determined that Decedent had diffuse histiocytic lymphoma, stage IV–B. Decedent developed a paraparesis [1] due to a spinal cord obstruction by lymphoma and expired on July 29, 1991.

Claimant testified as follows. Decedent last worked on August 24, 1983. In May of 1985, Decedent was awarded workers' compensation partial disability benefits, commencing in December of 1983, due to coal workers' pneumoconiosis. Prior to his death, Decedent had suffered from a worsening shortness of breath; he could not breathe at night; he had a dry cough each day; and he had very restricted activities at home because of his shortness of breath.

Claimant also introduced the medical report and deposition testimony of Joshua A. Perper, M.D., a board certified forensic pathologist. Dr. Perper testified that he reviewed numerous medical reports and hospitalization records covering the period from 1974 through 1988, twenty-six microscopic slides and the report of the chest autopsy performed on July 30, 1991.[2] Dr. Perper testified that, based upon his review, Decedent had acquired simple coal workers' pneumoconiosis, with associated scar emphysema and marked centrilobular emphysema, and also arteriosclerosis of the coronary arteries, which showed recanalized thrombus with substantial restoration of initial lumen by more than sixty per cent.[3] Dr. Perper further testified that Decedent's myocardium showed evidence of an organizing myocardial infarction, two to three weeks old, with evidence of retained necrosis.[4] Dr. Perper opined that Hilary Evans, M.D., the performing prosector, mistook the retained necrosis as an acute myocardial infarction. Dr. Perper stated that the absence of an acute inflammatory infiltrate in the area of necrosis or around it, in spite of advanced necrotizing changes, clearly indicates that this was a retained necrosis and not a new myocardial infarction. Accordingly, Dr. Perper stated that Decedent did not have a heart attack as the terminal event.

Dr. Perper had not reviewed the hospital reports relevant to Decedent's 1991 admissions to Presbyterian University Hospital and Lee Hospital. Dr. Perper recognized that Decedent had a history of lymphoma, but indicated that there was no evidence of that disease in the chest autopsy and opined that it was not involved as a cause of death. Instead, Dr. Perper testified that the primary cause of death was arteriosclerotic cardiovascular disease and that chronic lung disease secondary to coal workers' pneumoconiosis was a substantial contributing cause of Decedent's death.

Employer introduced into evidence the deposition testimony and medical reports of six board certified forensic pathologists, all of whom contradicted the opinion of Dr. Perper and found that coal workers' pneumoconiosis was not a substantial contributing factor in Decedent's death.[5]

1. A slight degree of paralysis, affecting the lower extremities.

2. The autopsy was performed upon Claimant's request; the request was limited to the chest and performed only for the purpose of determining whether coal workers' pneumoconiosis was a substantial contributing cause of Decedent's death.

3. A thrombus is a clot in the cardiovascular systems formed from constituents of blood. Lumen refers to the space in the interior of a tubular structure, such as an artery. Recanalization is the restoration of lumen in a blood vessel following thrombotic occlusion.

4. Necrosis means the death of one or more cells, resulting from irreversible damage. Myocardial refers to an area of the heart muscle; an infarction is a sudden insufficiency of arterial or venous blood supply due to emboli, thrombi, vascular torsion or pressure that produces a macroscopic area of necrosis.

5. Dr. Evans opined that the primary cause of death was an extension, of approximately eighteen hours of age, of an old posterior myocardial infarction.

Stephen T. Bush, M.D., testified that death resulted from a combination of diseases over several days time, including diffuse malignant lymphoma, congestive heart failure, and myocardial infarction with associated acute onset of paraplegia.

Steven P. Griffin, M.D., stated that the immediate cause of death was an acute myocardial infarction with contributory factors including congestive heart failure and diffuse histiocytic

The WCJ found Claimant's testimony to be competent, credible and persuasive. The WCJ further found that Decedent had been awarded partial disability benefits by a workers' compensation judge who had determined that Decedent's partial disability was a direct result of coal workers' pneumoconiosis.

The WCJ accepted the testimony of Dr. Perper, finding it to be competent, credible, sufficient, persuasive, compelling and expressed in a cohesive and coherent manner. The WCJ described Dr. Perper's testimony as "logical and persuasive given the long history of coal mine exposure and the medical and legal findings of disability during the decedent's lifetime." (WCJ's Finding of Fact No. 16.) The WCJ rejected the testimony of Drs. Evans, Bush and Griffin as not credible or competent, accepting their opinions "only to the point where they do not contradict the more competent testimony of Dr. Perper." (Finding of Fact No. 17.) The testimony of Drs. Rodman, Mendelow and Naeye was rejected by the WCJ as similarly lacking in credibility and competence.

Based on Dr. Perper's testimony and the evidence of record, the WCJ found that coal worker's pneumoconiosis was a substantial contributing factor in the death of Decedent and concluded that Decedent would not have

succumbed to his lymphoma, coronary artery disease and pre-existing myocardial infarction at the same time and in the same manner if he had never been exposed to respirable coal mine dust. Accordingly, the WCJ granted Claimant's fatal claim petition.

Employer appealed to the Board. The Board concluded that Dr. Perper's testimony was not unequivocal and reversed the WCJ's decision.

■ On appeal to this Court,[6] Claimant argues that the Board erred in holding that Dr. Perper's testimony was not unequivocal and that the Board exceeded its authority, as the prerogative to determine the credibility of witnesses and the weight to be accorded evidence rests solely with the WCJ. We agree.

■ In its decision, the Board complained that the WCJ failed to elaborate as to exactly how the pneumoconiosis was a substantial contributing factor in Decedent's death, stating that Dr. Perper had failed to cogently tie that explanation together. However, we know of no reason why a WCJ need repeat or rephrase a witness' testimony. This is particularly so where, as here, the witness' testimony quite clearly explains the relevant facts and conclusions.[7]

---

malignant lymphoma with associated acute onset of paraplegia.

Nathaniel F. Rodman Jr., M.D., believed that the sole cause of death was severe myocardial disease with fresh myocardial necrosis constituting an extensive myocardial infarction occurring less than twenty-four hours before death.

Harvey Mendelow, M.D., opined that death resulted from an acute myocardial infarct caused by severe anemia which resulted from lymphoma of the bone marrow.

Richard Naeye, M.D., also testified that death resulted from an acute myocardial infarct.

Dr. Evans opined that the degree of pneumoconiosis was so minimal that it could not have been a contributory cause of death. Drs. Bush and Griffin testified that the pneumoconiosis was too mild to have caused or contributed to pulmonary impairment or death. According to Drs. Naeye, Mendelow and Rodman, simple coal workers' pneumoconiosis was absent.

6. Our scope of review in a workers' compensation appeal is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2

Pa.C.S. § 704. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa.Cmwlth. 436, 550 A.2d 1364 (1988).

7. For example, Dr. Perper testified as follows:

In this case, the cause of death was primarily the arteriosclerotic cardiovascular disease, and the coal workers' pneumoconiosis acted through a mechanism of respiratory hypoxia [decrease below the normal level of oxygen in the blood] associated with substantial emphysema.

(N.T. 12.)

When asked about the role of arteriosclerotic heart disease in a patient suffering from hypoxia he explained:

Coronary artery disease is a condition in which the blood supply to the heart muscle is reduced. And the blood supply to the heart brings oxygen to the muscle. The respiratory system, and particularly the lungs, provide the blood with life-sustaining oxygen. Therefore, if there is chronic emphysema, there's hypoxia, and this hypoxia might at critical moments affect an already impaired coronary artery circulation.

(N.T. 12–13.)

■ The Board further complained that Dr. Perper did not identify which of the slides evidenced the coal workers' pneumoconiosis. Although Dr. Perper could not recall how many slides evidenced the disease, or specifically identify those upon which he relied, we conclude Dr. Perper's testimony regarding the slides is sufficient and that more precise testimony is not required. (See N.T. 7–9.)

Next, the Board stated that, based upon studies indicating that centrilobular emphysema was a natural accompaniment of coal workers' pneumoconiosis, Dr. Perper "deduced" that Decedent had centrilobular emphysema. Although Dr. Perper later discussed such studies, early in his testimony he stated that: "**On the examination of the section of the lungs,** there was chronic emphysema of the centrilobular type...." (N.T. 8.) (Emphasis added.) Dr. Perper stated that the studies confirmed a causal nexus between the emphysema and the coal workers' pneumoconiosis, but it is quite clear that Dr. Perper's findings of centrilobular emphysema were based on his review of the microscopic slides.

The Board also stated that Dr. Perper's rejection of lymphoma as a contributing cause of death made his testimony "inherently suspect." The Board believed that "there is no theory which explains why the other medical witnesses were certain that Decedent had Stage IV cancer yet Dr. Perper gave it no significance." (Board's Decision, p. 4.) Relying on *Spring Gulch Campground v. Workmen's Compensation Appeal Board (Schneebele)*, 148 Pa.Cmwlth. 553, 612 A.2d 546 (1992), *petition for allowance of*

*appeal denied*, 533 Pa. 620, 619 A.2d 701 (1993), the Board concluded that Dr. Perper's opinion denied an uncontradicted fact and thus was not unequivocal.[8]

In contrast to the testimony at issue in *Spring Gulch*, there is ample support in the record for Dr. Perper's opinion, including Decedent's prior disability award, Claimant's testimony, and portions of the testimony given by Drs. Evans, Bush and Griffin. Unlike the medical testimony in *Spring Gulch*, Dr. Perper's statements of fact did not conflict with his ultimate conclusions. We also note that Dr. Perper had not reviewed any evidence reflecting Decedent's lymphoma.

■ The Board ignores the fact that the WCJ recognized the existence of Decedent's lymphoma in his Finding of Fact No. 18, which illustrates a fundamental tenet of workers' compensation law: the WCJ has the prerogative to accept or reject, in whole or in part, the testimony of any witness, including medical witnesses, and a WCJ's acceptance of the opinion of one expert medical witness over another is within his prerogative and does not constitute reversible error. *Trans Freight v. Workmen's Compensation Appeal Board (Canada)*, 146 Pa.Cmwlth. 490, 606 A.2d 597 (1992). In addition, the Board exceeded its authority by implicitly giving weight to testimony of "the other medical witnesses who were certain that Decedent had ... cancer," where that testimony had been rejected by the WCJ.

Next, the Board points out that Dr. Perper erroneously believed that the lungs had not been instilled with Formalin, which gives a

On cross-examination, Dr. Perper was asked whether a person whose blood supply to the heart was reduced by coronary artery disease would suffer a myocardial infarction irrespective of how well oxygenated the blood was. He responded:

[Y]ou can compare this to an individual who is limping and going on an icy terrain, and if he is limping, he can fall by himself on the icy terrain and break a leg. By the same token, if somebody's behind him and gives him a healthy shove, he's much more likely to fall on the icy terrain.

(N.T. 48.)

**8.** In *Spring Gulch*, the referee denied the claimant's fatal claim petition, based on the finding

that the infarction which resulted in the decedent's death was caused by pre-existing atherosclerosis. The only evidence in the record of such condition was the testimony of the employer's medical expert, who acknowledged that none of the risk factors for the disease was present in the case, and who further admitted that the decedent's heart and kidneys were tested for the disease and were deemed normal.

The board reversed and the *Spring Gulch* court affirmed the board's decision. The court held that the doctor's testimony was not supported by the record and was not sufficient evidence that a reasonable mind would accept to support the referee's conclusion that a pre-existing condition was the cause of death.

better presentation of the extent of emphysema. Dr. Evans' autopsy report included no findings of centrilobular emphysema, although the lungs had been profused with Formalin. Citing *Consol Pa Coal Co. v. Workmen's Compensation Appeal Board (Bardos)*, 654 A.2d 292 (Pa.Cmwlth.1995), *petition for allowance of appeal denied*, 543 Pa. 697, 670 A.2d 144 (1995), the Board concludes that the negative "test result" as reported by Dr. Evans makes Dr. Perper's testimony equivocal.[9]

■ We do not agree with the Board that Dr. Evans' autopsy report is the equivalent of a "test result;" the report merely reflects the opinion of the writer, based upon evidence that was reviewed and addressed by other medical witnesses. Dr. Perper testified that Dr. Evans' failure to include findings of centrilobular emphysema was error and further indicated that Dr. Evans also failed to report fibro-anthracotic nodules, which, according to Dr. Perper, were evident upon microscopic examination. Moreover, while Dr. Perper mistakenly believed that the lungs had not been instilled with Formalin during the autopsy, he did not change his opinion when corrected. Accordingly, *Consol Pa Coal* does not apply.

■ Finally, the Board stated that the existence of centrilobular emphysema should have been confirmed by blood gas studies and that Dr. Perper failed to explain why blood gas studies of Decedent in 1988 indicated a normal reading. Our review of the record, (N.T. 45–48), reflects that Dr. Perper was continually interrupted during his testimony on this point. Thus, we do not conclude that his failure to supply an explanation of these test results is significant.

■ In conclusion, the Board exceeded its authority by substituting its credibility determinations for those of the WCJ and by reweighing the evidence. In addition, the Board misunderstood and/or mischaracterized the evidence, including testimony which,

as the WCJ found, was expressed in a cohesive and coherent manner. Finally, we remind the Board that this Court has traditionally held that the testimony of a *single* medical expert is a reasonable basis upon which a WCJ may base a finding of fact, despite conflicting evidence. *Spring Gulch.*

The Board's order is reversed.

### ORDER

NOW, October 31, 1996, the order of the Workmen's Compensation Appeal Board, dated March 6, 1996, at No. A95–1412, is reversed.

SMITH, J., dissents.

---

9. In *Consol Pa Coal*, the claimant's doctor testified that the claimant suffered from asthma and asthmatic bronchitis. However, the doctor admitted that if the results of a methacholine challenge test were negative, he would change his diagnosis. The claimant subsequently took the tests and the results were negative. Because the claimant had a negative test result, the court in *Consol Pa Coal* concluded that the doctor's testimony, taken as a whole, must be interpreted as equivocal.