# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael L. Pennington, : 
                Petitioner : 
                 : 
          v. : No. 2629 C.D. 2015
                 : Submitted: August 19, 2016
Workers' Compensation Appeal : 
Board (Transol Corp), : 
                Respondent : 


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE JULIA K. HEARTHWAY, Judge
               HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI         FILED: September 12, 2016


      Michael L. Pennington (Claimant), *pro se*, petitions for review of an order of the Workers' Compensation Appeal Board (Board) affirming the Workers' Compensation Judge's (WCJ) decision denying his review petition, petition for review of utilization review (UR) determination and penalty petition, and granting Transol Corp.'s (Employer) review medical petition, petition for review of UR determination and termination petition. For the reasons that follow, we affirm.[1]

---

[1] We granted Claimant's request to be excused from filing a reproduced record and denied Employer's application for relief seeking to dismiss the petition for review for failure to file a reproduced record or to timely request to be excused from filing a reproduced record.

**I.**

On August 15, 2002, Claimant, a welder for Employer, was cutting steel tubing when he was pinned between a tow motor and roller table, sustaining an injury to the thoracic region of his back. Employer issued a Notice of Compensation Payable (NCP) under the Workers' Compensation Act (Act)[2] classifying the injury as a "thoracic strain" by twisting. In March 2008, the WCJ granted a UR petition filed by Claimant and ordered Employer to pay for medications prescribed to Claimant.

In December 2009, the WCJ approved a compromise and release agreement (C&R agreement)[3] which states in Paragraph 4 that:

> Pursuant to the [NCP] dated September 13, 2002, the Claimant sustained a **thoracic strain by twisting**, while in the course and scope of his employment. The parties agreed and the Claimant understands that the within Agreement is specifically designed and intended to compromise and release indemnity benefits for any and all injuries sustained by the Claimant, either directly or indirectly, on or about August 15, 2002, whether reported or not.

(Compromise and Release Agreement at ¶4) (emphasis added).[4]

---

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1–1041.4, 2501–2708.

[3] Claimant was represented by counsel at this stage of the proceedings.

[4] Pursuant to the C&R agreement, Claimant was awarded $77,500.00 and Employer remained responsible for injury-related medical bills.

Paragraph 29 of the addendum to the C&R agreement regarding the accepted description of injury provided that:

> This Agreement resolves the description of the [Claimant's] injuries [which are more fully described in Paragraph #4, above] [sic] that are known and/or maybe unknown as of now and/or in the future while working for the Employer as of the date of the written approval of this Agreement.

(Addendum to Compromise and Release Agreement at ¶29.)

In April 2010, Employer filed a UR request seeking perspective review of treatment by Claimant's doctor, Randall N. Smith, M.D. (Dr. Smith), and all prescription medications. Scott Sexton, M.D. (Dr. Sexton), issued a report and UR determination face sheet finding Dr. Smith's treatment to be reasonable and necessary in part. Claimant then filed a petition to review that portion of Dr. Sexton's report that found the treatment unreasonable. The WCJ granted the petition and ordered Employer to reimburse all medications prescribed by Dr. Smith.

In February 2013, Claimant, through counsel, filed a petition for penalties alleging unpaid medical bills for office visits and prescription medications. In April 2013, Claimant filed another petition for review of UR determination of Kelly Agnew, M.D. (Dr. Agnew), who had issued a UR determination finding any and all treatment by Dr. Smith, including medication from January 2013 onwards, to not be reasonable or necessary.

3

Employer then filed a petition to terminate benefits alleging that based on a March 2013 independent medical evaluation (IME) by John A. Kline, Jr., M.D. (Dr. Kline), Claimant had fully recovered from his work injury. In July 2013, Employer filed a petition to review medical treatment and/or billing, asserting that Claimant's bills were not work-related, and a petition for review of UR determination of William H. Spellman, M.D. (Dr. Spellman), who had concluded that the treatment provided by Dr. Smith from April 2013 into the future was reasonable and necessary.

In September 2013, Claimant, through counsel, filed a petition to review compensation benefits, requesting that the description of the injury be expanded to conform to prior WCJ decisions and to conform to what injuries Dr. Smith was purportedly prescribing pain medications for. He also filed a petition for review of UR determination by Stanley R. Askin, M.D. (Dr. Askin), finding that the medical treatment in the nature of a replacement stimulator prescribed by Anthony Palmaccio, Jr., M.D. (Dr. Palmaccio), was neither reasonable nor necessary. All the outstanding petitions were consolidated.

**II.**

**A.**

Before the WCJ, Claimant testified that he has had four surgeries and is still waiting on a stimulator repair, which has been broken for three years now, and that his condition remains the same as before. He described his current pain as being in his mid-back, with numbness and pain in his mid-back and both legs. He

4

explained that he gets extreme pain when he twists at the waist or if he tries to lift anything.

He testified that he began treating with Dr. Smith in 2003 and has continued to receive the same treatment and medications since then, and that he uses a cane. Claimant stated that he depends on his prescription medications, testifying, "In the morning when I wake up, the pain is actually indescribable. The pain wakes me up every morning around 5:00, 5:30 and it continues into the afternoon and the medication always takes effect. At that time is when my back starts to feel better relief." (June 28, 2013 Hearing Transcript at 19.) He stated that when he started treating with Dr. Smith, he would rate his pain as an eleven on a one to ten scale, whereas he currently rates it at a four.

Claimant testified to using a Bowflex Extreme Exercise Equipment machine without any added weight to exercise his upper body three times a week for 15 to 20 minutes. He also acknowledged having a treadmill, with which he can only walk for 10 to 15 minutes, and a stationary bicycle which he does not use much because he cannot pedal.

Claimant also authenticated his affidavit in which he described his work injury:

> On August 15, 2002, while working on a drill press, I was lifting and stacking bundles of steel tubing on a pallet jack with a forklift, when the bundle, which was not properly banded, fell[, ] throwing me against a machine, and I was stuck between the forklift and the tubing. While trying to push the bundle through the press

5

to free myself, I felt a pop and immediate sharp pain in my lower and mid[-]back, and I could not stand upright. I reported the injury and began treating. An MRI revealed a shattered disc and disc herniations. I needed back surgery to prevent paralysis as part of a disc was pushing against my spinal cord. However, since the surgery, I have been in unbearable pain. I have had a few surgeries since my injury including a fusion, insertion of a titanium plate and screws and surgery to implant a spinal stimulator in my back.

(Claimant's Affidavit at ¶2.) He further noted having treated at St. Joseph's Hospital with Dr. Smith, Dr. Palmaccio and Dr. Phillip Perkins. No evidence was offered as to when the surgery took place or medical testimony that it was related to his August 15, 2002 accident.

## B.

In support of its petitions, Employer offered the deposition of Dr. Kline, a board-certified physician in physical medicine and rehabilitation, pain management and disability impairment. In March 2013, Dr. Kline examined Claimant, and in conjunction with his examination, he took Claimant's medical history and reviewed Claimant's medical records. Dr. Kline noted that after his work injury, Claimant underwent X-rays and an MRI, that the MRI demonstrated a disc problem or disc pathology, and that Claimant underwent surgery at the T11/12 disc and had subsequent therapy. Dr. Kline also testified that Claimant was seen by Dr. Smith and underwent placement of a spinal cord stimulator, therapy, TENS unit, acupuncture, back braces, as well as injections. He stated that at the time of the IME, Claimant reported having lower/mid-back pain, rating it as a four to five out of ten, but reaching a level of seven to eight, as well as numbness and tingling

in both of his legs. Dr. Kline also noted that Claimant was taking a "truly exorbitant amount" of narcotics, which are very short acting medications, explaining that in his 17 years of doing pain management, he has never had a patient, including those he was treating "palliatively on their death bed for cancer," on such high doses. (January 2014 Deposition of Dr. Kline at 14.) He opined that it would be impossible for Claimant not to be addicted to the narcotic medication given the doses he is receiving.

With regard to his examination of Claimant, Dr. Kline testified:

Well, it indicated in his appearance he appeared comfortable. Wasn't in any distress. I indicated that he was moderately lethargic. He definitely appeared to be somewhat slow to respond, and as well as appeared to be fatigued. I generally looked at his structure and his posture to see if there was any kind of significant abnormality. In this case, I indicated he had what we call kyphoscoliotic deformity, meaning that basically his mid-back area was somewhat curved much as you would see kind of like Quasimodo. There was a hump, but obviously not as excessive. And scoliosis means that there'd be also some curvature going from side to side. And spine injury's generally a developmental difficulty. Basically as you're an adolescent and you grow, these problems then develop.

There was obviously the scarring from the prior surgical interventions. I physically checked as well as measured the limbs to see if there was any evidence of atrophy. In this case there was none, indicating there was no significant nerve damage in either the neck or the low back area.

I assessed his gait [without a cane], he walked normally, but I indicated slow [sic], but had no evidence of a limp. He could stand on tip toes and heel without difficulty.

7

And when I looked for balance testing, in particular by performing a Romberg test, that was negative.

***

And generally looking at the range of motion, basically I asked him to bend, and he does this of his own volition without my assistance. There was some mild limitation in his low back area basically to 80 degrees with 90 degrees being normal. The extension was to 15 which, [sic] was within normal limits. His ability to bend from side-to-side was somewhat limited at 30 degrees, and rotate was at 45 degrees, generally demonstrating some mild limitation. And that was mostly of the low back area. Now, his range of motion of his joints in his legs were normal.

In the palpatory exam, this is simply applying pressure, he indicated basically it was tender everywhere from the mid-back area down to the upper portion of the low back area. It was kind of diffuse, wasn't really isolated to any specific region. And I looked for more objective findings such as spasms; there were none. In the lower portion of the low-back, basically in the sciatic notch or over the SI joints, or what we call the sacroiliac joints, or the outside portions of the hip or the buttocks, in this case he had no subjective tenderness.

(*Id.* at 18-20.)

Dr. Kline also testified to performing a neurological examination of Claimant which demonstrated no evidence of nerve damage; however, it demonstrated "some give-way weakness and that was really on the top portion of his legs." (*Id.* at 20.) He stated that Claimant's reflexes were normal and symmetric, indicating no significant nerve damage, and Claimant's sensory evaluation was normal, again indicating no evidence of nerve damage. Dr. Kline

8

also stated that Waddell's testing was used to determine if there was a psychological component to chronic low back pain. He testified that testing was overall positive, "indicating that there was a non-organic reason for his pain, which can then imply symptom magnification." (*Id.* at 21.) He testified that an illness behavior profile was performed and that he found there to be a moderate to high degree of symptom exaggeration.

Dr. Kline opined that at the time of the IME, Claimant had fully recovered from the thoracic sprain/strain because there was no spasm or reproducible trigger points. As a result, Dr. Kline stated that Claimant would not require any further medical treatment, including narcotics, for that injury, and that Claimant could return to work without any work restrictions. Dr. Kline acknowledged that Claimant's arthritis of the spine, neck and the discs in the low/mid-back, his prior cervical surgeries and kyphoscoliotic deformity could create pain symptoms; however, those conditions are not related to the work injury.

## C.

In response, Claimant submitted the medical reports of Dr. Smith from August 2010 through June 2013. Dr. Smith is board-certified in orthopedics and pain management. Dr. Smith reported treating Claimant shortly after he underwent multiple procedures, injections and surgeries due to his work injury, and had chronic, intractable pain. Dr. Smith opined that the only option was to control the pain with medications to maximize symptomatic relief with minimized side effects. Dr. Smith noted that as of July 2012, Claimant had thoracic and lumbar discogenic problems, leading to the chronic intractable pain, with the medicines

9

keeping him somewhat comfortable. Dr. Smith reported that from August 2012 through February 2013, Claimant had chronic thoracic and lumbar discogenic disorder, peridural adhesions, with chronic intractable pain, which were being treated by a significant amount of medications that were giving Claimant good functional improvement with no adverse reaction. As of May 2013, Dr. Smith recorded the same assessment and recommendations, noting his plan of seeing Claimant regularly to potentially adjust the medications and also repair the stimulator. He also noted continuing chronic thoracic and lumbar discogenic problems and myofascial syndrome with sciatica and peridural adhesions. As of June 2013, his assessment was significant thoracic and lumbar discogenic problems and damage leading to sciatica, continuing pain in the mid- and lower back, with numbness in Claimant's feet, and prescribed the same treatment as before.

Dr. Smith reported having reviewed Dr. Kline's report and did not disagree with the history that Dr. Kline described. However, Dr. Smith noted that the medications prescribed to Claimant provide significant functional improvement and are not excessive. Dr. Smith opined that it would be reasonable to continue the course of action with injections and medications. Dr. Smith disagreed with Dr. Kline's findings of preexisting degenerative arthritis and symptom magnification, reasoning that the extensive procedures which Claimant underwent would not have been performed just for degenerative arthritis. Dr. Smith noted that the work injury and subsequent surgeries damaged the facet joints and injured muscles, ligaments and discs.

**III.**

Finding Dr. Kline's testimony to be more credible than that of Dr. Smith's and concluding that Claimant had fully recovered from his work injury of "thoracic strain" effective March 26, 2013, the WCJ granted Employer's petitions to terminate, review medical treatment and UR petition, and denied and dismissed Claimant's petitions for penalties, review of UR and petition for review. With respect to Claimant's review petition, the WCJ found that the C&R agreement accepted the description of Claimant's injury as a "thoracic strain" and, as such, based on *DePue v. Workers' Compensation Appeal Board (N. Paone Construction, Inc.)*, 61 A.3d 1062 (Pa. Cmwlth. 2013), Claimant is precluded from expanding or modifying the description of his injury once a C&R agreement has been finalized, especially because the parties did not set forth specific language in the C&R agreement to reserve the right to seek further review, expand or modify the description of injury. The WCJ also noted that the sole dispute in the WCJ's June 2011 determination was the reasonableness and necessity of Claimant's treatment with Dr. Smith and not whether Claimant's medications continued to be related to his work injury; thus, the WCJ in that matter did not make any findings or conclusions as to the description of injury.

The WCJ further found that the medical care and treatment subject to review in the petitions, including the care prescribed by Drs. Smith and Palmaccio, was not causally related to the work injury, nor reasonable nor necessary to a diagnosis of a thoracic strain. In so determining, the WCJ credited Dr. Kline's testimony over that of Dr. Smith's, reasoning that Dr. Kline performed a thorough medical record review, candidly acknowledged testifying as to full recovery, "and

11

his overall review were defined to his understanding of the accepted injury being a thoracic strain/sprain." (WCJ's August 1, 2014 Decision at 9.) The WCJ further contrasted Drs. Smith and Kline's testimonies, explaining:

> [I]n reviewing the entirety of Dr. Smith's medical reports and records, although he presents fairly conclusory assertions that [Claimant] continues to have ongoing symptomology and required treatment relative to the August 15, 2002 work injury, at no point does he reference the diagnosis of thoracic strain/sprain. Instead, consistently, throughout his reports he provides an assessment of [Claimant's] condition or diagnoses being related to thoracic and lumbar discogenic problems leading to the chronic intractable pain. But for the specifically defined description of injury of a thoracic strain, it seems readily apparent that the work injury could have been shown to have resulted in, at the minimum, the thoracic discogenic problems. Dr. Kline acknowledged that although certainly the thoracic strain/sprain did not result in the thoracic discogenic problems, that the thoracic disc injuries and subsequent surgery could have resulted from the injury, but that would have been essentially an injury separate and apart from the thoracic sprain/strain. It is further noted that Dr. Kline's opinions as to [Claimant's] full recovery from the thoracic sprain/strain and that none of the ongoing treatment is related to the same, is not only not refuted by the Utilization Review Determinations, but actually to some extent, supported by the same.

(*Id.* at 9-10.) Finally, with respect to Claimant's penalty petition, the WCJ concluded that Claimant failed to prove that Employer violated the Act by declining to pay his medical expenses because Claimant's treatment was not related to the established work injury and Claimant was not entitled to benefits for non-work-related expenses.

12

Claimant appealed to the Board, arguing that the WCJ erred in denying his review petition seeking to expand his work injury description and in determining that the C&R agreement represents a final determination as to the description of his injury. Claimant contended that the WCJ erred in denying his UR petition and granting Employer's UR petition by failing to credit the allegedly unappealed and controlling June 2013 UR determination of Dr. Spellman. Lastly, Claimant argued that the WCJ erred in finding that he has fully recovered from his work injury and in terminating his benefits.

The Board affirmed the WCJ's decision, finding that the C&R agreement is final and binding as to the injury description because it contains not only general release language resolving "any and all injuries" sustained on August 15, 2002, but also specific release language expressly reflecting the parties' intent to resolve issues related to the injury description and agreeing that the injury is limited to a "thoracic strain." The Board further found that the WCJ did not err in finding that Claimant's treatments were not reasonable and necessary based on Dr. Kline's testimony, which was supported by two UR reviewers, Drs. Askin and Agnew. With regard to Claimant's contention that the WCJ erred in failing to credit the UR determination of Dr. Spellman, the Board noted that contrary to Claimant's assertion that the UR determination was unchallenged, Employer did file a UR petition challenging that determination and the WCJ granted the petition. Moreover, the Board explained that it is the WCJ's purview as the ultimate fact-finder to determine that Employer's evidence is more credible than that of Claimant's, including Dr. Spellman's opinions. The Board concluded that given Dr. Kline's credible opinion that Claimant had fully recovered from the thoracic

13

strain injury, the WCJ did not err in terminating Claimant's benefits. Claimant appealed.[5]

## IV.

## A.

## 1.

The central issue on appeal is whether the accepted description of the injury in a C&R agreement described as a "thoracic strain" can be modified to include the other injuries, presumably, the ones set forth in Claimant's affidavit. Claimant argues that it can because the C&R agreement provides the description of the injury as "thoracic sprain/strain, any and all [causally] related, known or unknown, into the future," suggesting that the accepted description goes beyond just that of "thoracic strain" and includes any and all causally-related injuries. (Claimant's Brief at 9.) Because they are, in effect, accepted, Claimant contends that Employer is obligated to pay for medical treatment due to those "unknown" injuries.

For its part, Employer contends that the inclusion of Paragraph 29 in the addendum to the C&R agreement "specifically notes that the injury is limited to the thoracic strain set forth in [P]aragraph 4 [and] makes it clear that [Employer]

---

[5] Our review of a decision of the Board is limited to determining whether errors of law were made, whether constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. *Ward v. Workers' Compensation Appeal Board (City of Philadelphia)*, 966 A.2d 1159, 1162 n.4 (Pa. Cmwlth.), *appeal denied*, 982 A.2d 1229 (Pa. 2009).

was only accepting liability for future medical treatment related to a thoracic strain." (Employer's Brief at 19.)

In *DePue*, we affirmed the Board's determination that a review petition seeking to expand the accepted work injury was barred by an approved C&R agreement that set forth a description of the accepted work injury. We explained that "[i]t is well established that a valid C & R agreement, once approved, is final, conclusive and binding on the parties," unless there is a clear showing of fraud, deception, duress, mutual mistake or unilateral mistake caused by an opposing party's fault. *DePue*, 61 A.3d at 1067. Moreover, "[o]nce a C&R agreement has been approved, any issue which was not expressly reserved in the agreement may not be raised later." *Id.*

As in this case, the claimant in *DePue* argued that "the description of the 'injury' in the C & R agreement as 'any and all injuries' sustained at Employer's workplace indicates the parties' intention to include the left shoulder injury in his injuries accepted by Employer." *Id.* at 1068. We found, however, that the employer did not accept its liability for the added injury in the NCP or in any agreement, and "specifically refused to include it as part of the C & R [agreement]. Nor was there any prior decision finding Employer liable for that injury." *Id.*

Here, the approved C&R agreement establishes that the injury is a "thoracic strain" or "thoracic strain by twisting" and there is no mention in the agreement of disc herniation or disc surgery. The C&R agreement was agreed

15

upon by both parties, with the assistance of counsel, and there is no allegation of fraud or duress. Nothing in the C&R agreement allows for the amendment of the description of injury; instead, the inclusion of Paragraph 29 in the amendment to the C&R agreement specifically limits Employer's liability to the agreed-upon injury of "thoracic strain." The inclusion of the language "any and all injuries" in Paragraph 4 of the C&R agreement is not indicative of Employer's acceptance of liability of any added injury.

## 2.

Claimant also argues that prior decisions addressing UR determinations found his continuing treatments for pain purportedly for those injuries, not mentioned in the C&R agreement, to be reasonable and necessary, making them causally related to his work injury.

An employer's voluntary payment of an employee's medical expenses is not an admission of liability. *Securitas Security Services USA, Inc. v. Workers' Compensation Appeal Board (SCHUH)*, 16 A.3d 1221, 1224 (Pa. Cmwlth. 2011). Moreover, "there is a distinction between paying medical expenses and accepting a work injury by specifically allowing an employer to request [UR] in a medical only case even where there has not been an acknowledgment or determination of liability for a work-related injury, with the caveat that the insurer shall be liable to pay for treatment found to be reasonable or necessary by an uncontested UR determination." *Id.* at 1225. As the WCJ in the underlying matter noted, the WCJ in the prior decisions was only addressing UR determinations, which did not require findings or conclusions as to the description of injury. The WCJ in prior

16

decisions found the Claimant's treatments to be reasonable without considering the defined work injury, which the underlying WCJ did.

**B.**

Claimant also argues that the WCJ erred in crediting Dr. Kline's testimony over that of Dr. Smith and Claimant.

It is well established that the WCJ, as the finder of fact, has the authority over questions of credibility, conflicting evidence and evidentiary weight. *Sherrod v. Workmen's Compensation Appeal Board (Thoroughgood, Inc.)*, 666 A.2d 383, 385 (Pa. Cmwlth. 1995). As a result, the WCJ is entitled to accept or reject the testimony of any medical witness in whole or in part. *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck)*, 664 A.2d 703, 706 (Pa. Cmwlth. 1995). Moreover, the WCJ may choose to rely on one medical expert over another. *Morey v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.)*, 684 A.2d 673, 678 (Pa. Cmwlth. 1996). A WCJ's credibility and evidentiary determinations are binding on appeal unless made arbitrarily and capriciously.[6] *Casne v. Workers' Compensation Appeal Board (STAT Couriers, Inc.)*, 962 A.2d 14, 19 (Pa. Cmwlth. 2008).

---

[6] A capricious disregard of evidence exists when there is a willful and deliberate disregard of competent testimony and relevant evidence which one of ordinary intelligence could not possibly have avoided in reaching a result. *Casne v. Workers' Compensation Appeal Board (STAT Couriers, Inc.)*, 962 A.2d 14, 19 n.5 (Pa. Cmwlth. 2008) (citation omitted). The meaning of arbitrary includes "founded on prejudice or preference rather than on reason or fact." *Id.* (citation omitted).

The WCJ credited the testimony of Dr. Kline over that of Dr. Smith, explaining that Dr. Kline performed a thorough review and was candid in his testimony. In coming to his decision that Dr. Kline was more credible, the WCJ reviewed the entirety of Dr. Smith's reports and records and pointed out issues in them. The WCJ compared and contrasted Dr. Smith's testimony against Dr. Kline's and explained his reasoning as to why he was accepting Dr. Kline's testimony. The WCJ's finding of one medical witness's testimony to be more persuasive than the other's is well within his discretion.

Accordingly, the order of the Board is affirmed.


_____
DAN PELLEGRINI, Senior Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael L. Pennington, :
                 Petitioner :
                 :
         v. : No. 2629 C.D. 2015
                 :
Workers' Compensation Appeal :
Board (Transol Corp), :
                 Respondent :

# **O R D E R**

AND NOW, this 12<u>th</u> day of <u>September</u>, 2016, the order of the Workers' Compensation Appeal Board dated October 27, 2015, at A14-0841, is affirmed.

_____
DAN PELLEGRINI, Senior Judge