IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Suany Sufran, : 
                Petitioner : 
                 : 
    v. : No. 1385 C.D. 2019
                 : SUBMITTED: July 30, 2021
Workers' Compensation Appeal : 
Board (C&S Wholesale : 
Grocers Inc. and Indemnity Insurance : 
Company of North America), : 
                Respondents : 

BEFORE:    HONORABLE P. KEVIN BROBSON, President Judge
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                        FILED: November 15, 2021

Suany Sufran (Claimant) petitions this Court for review of the September 4, 2019 order of the Workers' Compensation Appeal Board (Board), which affirmed a decision and order of a Workers' Compensation Judge (WCJ) denying Claimant's claim petition on the basis that she failed to establish she sustained a work injury. After thorough review, we affirm.

## I. Background

On May 16, 2017, Claimant filed a claim petition seeking compensation under the Workers' Compensation Act (Act)[1] for a rotator cuff capsule sprain, pain in her right and left knees and upper right arm, and a knee sprain, which she allegedly sustained on February 24, 2017, while working as a selector for C&S Wholesale Grocers, Inc. (Employer). Certified Record (C.R.), Item No. 2. Claimant sought

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041, 2501-2710.

total disability benefits from March 9, 2017, and ongoing. *Id*. Employer denied the material allegations in the claim petition. C.R. Item No. 4. At a hearing held on July 17, 2017, Claimant testified live before the WCJ. Claimant also presented the September 29, 2017 deposition testimony of her treating physician, Gene Levinstein, M.D. Employer presented the December 11, 2017 deposition testimony of Robert Mauthe, M.D., who performed an independent medical examination (IME) of Claimant on July 13, 2017.

### A. Claimant's Evidence

At the July 17, 2017 hearing, Claimant testified that her work as a selector involved receiving product orders through a headset and placing the items into totes. C.R., Item No. 11, Notes of Testimony (N.T.), 7/17/17, at 10. She filled between 500 and 700 totes per day, with some of the totes weighing as much as 25 to 30 pounds. *Id*. Employer expected Claimant to fill more than 700 totes per day. *Id*. at 22. After filling a tote, Claimant was required to lift it onto a belt. *Id*. at 11. On February 24, 2017, while Claimant was straining to lift a tote filled with a large quantity of peroxide onto the belt, she felt discomfort in her right shoulder and in both of her knees. *Id*. at 11-12, 22-23. She reported her alleged work injury to Employer, which sent her to St. Luke's Hospital for evaluation. *Id*. at 12. Claimant returned to work in a light-duty capacity, but she was terminated after a week because Employer did not accept the work restrictions imposed by the hospital physician. *Id*. at 12-13.

Claimant currently treats with Dr. Levinstein and undergoes physical therapy, which has led to improvement in her right knee. *Id*. at 13-14. However, the pain in her right shoulder and left knee persists, limiting her ability to lift heavy objects, drive long distances, and care for her children. *Id*. at 14. Claimant does not believe

that she can resume her pre-injury work due to pain, but she could perform the light-duty work she was assigned prior to her termination. *Id*. at 14-15. Claimant had never been treated for pain in her right shoulder or in either of her knees before the date of her alleged work injury. *Id*. at 15. She uses ibuprofen for pain management. *Id*. at 21.

Dr. Levinstein testified as an expert in pain management and rehabilitation and stated that he first examined Claimant on April 10, 2017. C.R., Item No. Levinstein Deposition (Dep.), 9/29/17, at 5. During the April 10, 2017 examination, Claimant advised that she sustained a work injury to her knees and right shoulder on February 24, 2017, which she related to repetitive activity at work. *Id*. Dr. Levinstein's physical examination revealed no instability in Claimant's knees or shoulder, but he noted that Claimant had some impingement of the right shoulder, and she reported pain with both external and internal rotation. *Id*. at 7. Claimant's range of motion in her knee[2] was normal, and her gait was mildly antalgic. *Id*. Dr. Levinstein initially assessed Claimant with pain in both knees and a rotator cuff shoulder sprain. *Id*. He recommended that Claimant pursue physical therapy and continue with ibuprofen. *Id*. at 8.

Dr. Levinstein also examined Claimant on July 11, 2017, at which time she reported that her right knee had improved with therapy, but that she still had pain in her left knee and right upper arm. *Id*. at 8-9. Dr. Levinstein ordered a magnetic resonance imaging (MRI) study of Claimant's left knee and right shoulder. *Id*. at 9. The shoulder MRI was essentially unremarkable. *Id*. The left knee MRI revealed an oblique tear of the medial meniscus. *Id*. at 9-10. Dr. Levinstein diagnosed Claimant with a right rotator cuff sprain, a right knee sprain strain, and a left knee

---

[2] Dr. Levinstein did not specify the knee to which he referred.

3

meniscal tear, which he related to Claimant's work activities. *Id*. at 13. He opined, within a reasonable degree of medical certainty, that the meniscal tear of Claimant's left knee was directly and causally related to the repetitive nature of her job, which required that she twist her knees, squat, kneel, and walk while carrying heavy boxes. *Id.* at 10-11.

On cross-examination, Dr. Levinstein admitted that Claimant had recovered from her right knee injury and that her right shoulder injury showed significant improvement. *Id.* at 15. He explained that Claimant could return to work, but with restrictions on the amount of weight she would be required to lift. *Id*. at 15, 26-27. Dr. Levinstein acknowledged that treatment records from a chiropractor in his employ were a "huge mess," and those records reflected that Claimant underwent physical therapy for symptoms unrelated to her alleged work injury. *Id*. at 19-21. As to the alleged work injury, Dr. Levinstein conceded that no specific traumatic event caused her meniscus tear. *Id.* at 32. Rather, Dr. Levinstein believed that she sustained "repetitive micro trauma" to the knee, although he could not say when and where the meniscus tear initiated. *Id.* at 32-33.

### B. Employer's Evidence

Employer's expert, Dr. Mauthe, is board certified in physical medicine and rehabilitation and electrodiagnostic medicine. C.R., Item No. 18, Mauthe Dep., 12/11/17, at 4-5. During the July 13, 2017 IME, Dr. Mauthe obtained a medical history from Claimant, who related that she developed pain at work on February 24, 2017, while lifting plastic totes filled with bottles of peroxide. *Id*. at 6-8. Specifically, Claimant complained of pain in her right shoulder and left knee. *Id*. at 9. According to Dr. Mauthe, Claimant reported to him that her injuries did not arise from a single event, but instead were caused by the nature of her work. *Id*. at 10.

4

Dr. Mauthe's physical examination of Claimant did not reveal evidence of objective impairment. *Id*. at 14-15. Based on Claimant's history, the records available to him as of the date of the IME, and his physical examination of Claimant, Dr. Mauthe opined that Claimant was not injured in the course of her employment. *Id.* at 14. Instead, Dr. Mauthe believed that Claimant could not tolerate her work duties because she was in poor physical condition. *Id*. at 14. Dr. Mauthe's opinion did not change after he reviewed the MRIs of Claimant's left knee and right shoulder. *Id.* at 15-17. The MRI of Claimant's right shoulder was "absolutely normal[.]" *Id.* at 17. While Dr. Mauthe agreed that the MRI of Claimant's left knee showed an oblique tear of the medial posterior meniscus, he attributed that tear to Claimant's size and age, not to a work-related injury. *Id*. at 16-17.

Dr. Mauthe also reviewed an October 2017 surveillance video of Claimant, which he felt documented normal physical movement consistent with Claimant's presentation during the July 13, 2017 IME. *Id*. at 18-19. Dr. Mauthe disagreed with Dr. Levinstein's opinion that Claimant sustained a work-related injury. *Id*. at 20. He opined that Claimant merely experienced discomfort while performing her work, which he did not equate with a work injury. *Id.* Dr. Mauthe also disagreed that Claimant's meniscal tear was work related. *Id*. at 21. Instead, Dr. Mauthe considered that condition to be degenerative in nature and likely caused by Claimant's body size and age. *Id*.

### C. WCJ Decision

On June 21, 2018, the WCJ circulated a decision denying Claimant's claim petition. C.R., Item No. 5. He rejected Claimant's live testimony as not credible. WCJ's Decision at 4. This credibility determination formed the basis for the WCJ's rejection of Dr. Levinstein's testimony, as Dr. Levinstein's understanding of the

alleged work injury was based on information Claimant provided. *Id.* The WCJ also found Dr. Levinstein not credible because his testimony that Claimant did not return to work after February 24, 2017, was contradicted by the allegations in the claim petition, as well as Claimant's own testimony that she worked with restrictions until March 9, 2017. *Id.* Dr. Levinstein opined that Claimant's alleged work injury was caused by the repetitiveness of her work duties; however, no evidence was presented that established the repetitive nature of those duties. *Id.* Finally, Dr. Levinstein diagnosed and treated Claimant, even though his initial examination failed to reveal any objective findings. *Id.*

Having rejected Claimant's and Dr. Levinstein's testimony as not credible, the WCJ did not address the credibility of Dr. Mauthe. *Id.* Based on the evidence presented, and the above credibility determinations, the WCJ found that there was no credible evidence that Claimant suffered a work injury in the course and scope of her employment. *Id.* at 5. Accordingly, the WCJ concluded that Claimant failed to meet her burden of proof and he denied the claim petition. *Id.* at 4-5. Claimant appealed to the Board, which affirmed.

## II. Issues

On appeal, [3] Claimant argues that the WCJ failed to issue a reasoned decision as required by Section 422(a) of the Act, 77 P.S. § 834, because the WCJ did not adequately explain his credibility determinations with respect to Claimant's and Dr. Levinstein's testimony. Specifically, Claimant contends that the WCJ's brief statement rejecting Claimant's live testimony does not permit adequate appellate review. She maintains that the WCJ's credibility findings as to Dr. Levinstein

---

[3] Our standard of review is limited to a determination of whether necessary findings of fact are supported by substantial evidence, whether constitutional rights were violated, or whether an error of law was committed. *Morey v. Workmen's Comp. Appeal Bd. (Bethenergy Mines, Inc.)*, 684 A.2d 673, 676 n.6 (Pa. Cmwlth. 1996).

cannot be properly reviewed absent further explanation regarding Claimant's credibility, given that Dr. Levinstein's testimony was rejected in part because it relied on information provided by Claimant. As to this point, Claimant asserts that she did present evidence regarding the repetitive nature of her job, as her testimony demonstrated that she filled 500 to 700 totes each day. Therefore, Claimant argues that the WCJ's rejection of Dr. Levinstein's testimony is not supported by substantial evidence. Finally, Claimant argues that the WCJ erred when he failed to make any findings or render a credibility determination with respect to Dr. Mauthe's testimony. *Id.*

### III. Discussion

Section 422(a) of the Act provides, in pertinent part:

> [a]ll parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached.

77 P.S. § 834.

To satisfy the reasoned decision requirement in Section 422(a), the "WCJ must set forth the rationale for the decision by specifying the evidence relied upon and reasons for accepting it." *A & J Builders, Inc. v. Workers' Comp. Appeal Bd. (Verdi)*, 78 A.3d 1233, 1243 (Pa. Cmwlth. 2013). In cases where a WCJ sees witnesses testify and can assess their demeanor, a mere conclusion as to which witness was deemed credible is sufficient to render the decision adequately "reasoned." *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043, 1052-53 (Pa. 2003). Conversely, in cases where a WCJ's credibility determination is not tied to a witness's demeanor, "some articulation of the actual

7

objective basis for the credibility determination must be offered for the decision to be a 'reasoned' one which facilitates effective appellate review." *Id.* at 1053. The purpose of a reasoned decision is to spare this Court from having to imagine the reasons why the WCJ believed the testimony of one witness over another. *Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.)*, 893 A.2d 191, 196 (Pa. Cmwlth. 2006). Section 422(a) does not permit a party to second-guess the WCJ's reasons for his credibility determinations. *Verizon Pa. Inc. v. Workers' Comp. Appeal Bd. (Mills)*, 116 A.3d 1157, 1161 n.3 (Pa. Cmwlth. 2015). A court may overturn a credibility determination only where it is arbitrary and capricious or so fundamentally dependent on a misapprehension of the facts, or so otherwise flawed, as to render it irrational. *Id*. at 1163.

Here, Claimant testified live before the WCJ, who assessed Claimant's demeanor and concluded that "Claimant's live testimony [was] not credible." WCJ's Decision at 4. Under *Daniels*, the WCJ's conclusion that Claimant lacked credibility is sufficient, and, therefore, the reasoned decision requirement under Section 422(a) has been satisfied. *See also Garcia-Guerrero v. Workers' Comp. Appeal Bd. (Se. Pers. Leasing)* (Pa. Cmwlth., No. 1394 C.D. 2019, filed Oct. 23, 2020), slip op. at 9 (holding that a WCJ's conclusion that the "'[c]laimant's live testimony w[as] not credible'" satisfied the reasoned decision requirement).[4] Additionally, because we find that the WCJ was not required to further explain his credibility determination as to Claimant, we are unpersuaded by her argument that we cannot properly review the WCJ's credibility determination as to Dr. Levinstein absent a more fulsome explanation of Claimant's credibility.

---

[4] Pursuant to Pennsylvania Rule of Appellate Procedure 126(b), Pa.R.A.P. 126(b), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a), an unreported opinion of this Court, while not binding, may be cited for its persuasive value.

With respect to Dr. Levinstein's deposition testimony, the WCJ clearly articulated multiple objective bases for his credibility determination. The WCJ first explained that Dr. Levinstein's understanding of the alleged work injury was based on information he received from Claimant, whose testimony was discredited. This had the effect of tainting the information upon which Dr. Levinstein based his opinion. The WCJ next noted that Dr. Levinstein's testimony, which reflected that Claimant did not return to work after February 24, 2017, contradicted the allegations in the claim petition and Claimant's own testimony that she returned to work with restrictions until March 9, 2017. While Dr. Levinstein opined that Claimant's alleged work injury was caused by the repetitive nature of her work duties, Claimant presented no evidence in this regard.[5] Finally, the WCJ found that Dr. Levinstein diagnosed and treated Claimant despite an apparent lack of objective findings in his initial examination.

Given the above, this Court is not in the position of having to speculate on the WCJ's reasons for rejecting Dr. Levinstein's testimony, as those reasons were clearly identified and articulated in his decision. Accordingly, we conclude that the WCJ's decision is sufficiently reasoned under Section 422(a) of the Act.

We are similarly unpersuaded by Claimant's argument that the WCJ erred when he failed to address Dr. Mauthe's credibility. In a claim petition proceeding, the claimant bears the burden of establishing all the elements necessary to support

---

[5] There is no merit to Claimant's argument that her testimony, which the WCJ discredited, provided the evidentiary basis for Dr. Levinstein's opinion that Claimant's alleged work injury was caused by the repetitive nature of her job. The law is well established that "[t]he WCJ is the ultimate fact finder and has complete authority for making all credibility" and evidentiary weight determinations. *Rife v. Workers' Comp. Appeal Bd. (Whitetail Ski Co.)*, 812 A.2d 750, 755 (Pa. Cmwlth. 2002). "The WCJ . . . is free to accept or reject, in whole or in part, the testimony of any witness, including medical witnesses." *Griffiths v. Workers' Comp. Appeal Bd. (Red Lobster)*, 760 A.2d 72, 76 (Pa. Cmwlth. 2000).

an award of workers' compensation benefits, including the existence of an injury and disability, and a causal relationship between the injury and the work incident. *Giant Eagle, Inc. v. Workers' Comp. Appeal Bd. (Thomas)*, 725 A.2d 873, 876 (Pa. Cmwlth. 1999). Disability is the loss of earnings or earning power that is caused by the work-related injury. *Sch. Dist. of Phila. v. Workers' Comp. Appeal Bd. (Lanier)*, 727 A.2d 1171, 1172 (Pa. Cmwlth. 1999). Instantly, once the WCJ rejected the testimony of Claimant and Dr. Levinstein as not credible, there was no further evidence of record that Claimant could have relied on to satisfy her burden of proof. Because Claimant failed to offer credible evidence in support of her claim petition, it was not necessary for the WCJ to assess Dr. Mauthe's credibility to render a reasoned decision. *See Stalworth v. Workers' Comp. Appeal Bd. (Cnty. of Delaware)*, 815 A.2d 23, 29-30 (Pa. Cmwlth. 2002) (competence of employer's medical expert is irrelevant where claimant's medical expert was not credible, and claimant did not meet her burden of proof).

Claimant's arguments herein represent nothing more than an attempt at subverting the WCJ's credibility determinations. As she has not demonstrated that these determinations were "arbitrary and capricious or so fundamentally dependent on a misapprehension of facts, or so otherwise flawed, as to render [them] irrational," we cannot disturb them on appeal. *Verizon Pa. Inc.*, 116 A.3d at 1163.

## IV.   Conclusion

Claimant had the burden of establishing the elements necessary to support an award of workers' compensation benefits. Claimant's testimony, as well as that of her medical expert, was rejected as not credible, and the WCJ's decision was

10

sufficiently reasoned under Section 422(a) of the Act.  As a result, we conclude that the WCJ did not err in denying Claimant's claim petition and we affirm the Board.

_____
ELLEN CEISLER, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Suany Sufran,                          :
               Petitioner          :
                               :
         v.                    :  No. 1385 C.D. 2019
                               :
Workers' Compensation Appeal          :
Board (C&S Wholesale                  :
Grocers Inc. and Indemnity Insurance  :
Company of North America),            :
              Respondents          :

# **O R D E R**

AND NOW, this 15th day of November, 2021, the September 4, 2019 order of the Workers' Compensation Appeal Board is hereby AFFIRMED.

_____
ELLEN CEISLER, Judge